SIMPSON *v.* MATTHEWS.

Opinion delivered July 13, 1931.

Tom F. Digby, for appellant.

Chas. W. Mehaffy and Rose, Hemingway, Cantrell & Loughborough, for appellees.

HART, C. J. This is an appeal from an order of the circuit court upholding the validity of a statute permitting adjoining landowners to form an improvement district and to condemn land adjacent to a State highway in order to construct a reservoir for the alleged protection thereof. No separate or particular statement of facts is necessary, for the reason that, on the consideration of the motion for a rehearing, the court has concluded that this case should be decided upon the single point whether the act is unconstitutional as being local or special act.

In construing article 5, § 25, of our Constitution, this court has uniformly held that the Legislature is the exclusive judge whether a provision by general law is possible under the provision of the Constitution to the effect that no special law shall be enacted in cases where a general law can be made applicable.

Amendment No. 14 was initiated by the people and adopted as a part of the Constitution at the general election in 1926. It reads as follows: "The General Assembly shall not pass any local or special act. This amendment shall not prohibit the repeal of local or special acts."

The Legislature of 1931 passed act No. 108, entitled, "An act to grant to county courts, in counties having a population of 75,000 or more, the right to condemn lands for the protection of public roads."

The preamble and so much of § 1 as we deem necessary for a proper consideration of the issue raised by the appeal are as follows:

"Whereas, in certain hilly or mountainous sections the rainfall is precipitated over State or public roads; thereby injuring the roads, and interfering with and endangering the use of them by the public, which precipitate flow of water could be controlled and regulated by the construction of suitable dams or reservoirs, which would protect the roads, and also the lower lands subject to such precipitate inundation; now therefore,

"Be it enacted by the General Assembly of the State of Arkansas:

"Section 1. Any five persons owning lands on or in the vicinity of a State highway or other public road on which the rainfall from the adjacent hills is precipitated so as to injure the road, or to interfere with its use by the public, may file a petition in the county court praying for an order condemning certain lands for a reservoir and authorizing the construction of a suitable dam, dams, or works, with the necessary reservoir or reservoirs, for impounding water to protect such road and lower lands from the precipitate flow of water thereon. The petition shall describe the road and lower lands to be protected, and shall be accompanied with plans and specifications for the proposed dams and reservoirs, with a description of the area to be flooded, and of lands to be condemned for such purpose," etc.

The remainder of § 1 and §§ 2, 3 and 4 relate to the method of procedure in the premises. Section 5 relates to the method of procedure in the premises. Section 5 provides that the act shall only apply to counties which now or hereafter may have a population of 75,000 inhabitants according to the last federal census.

It is manifest that, when the amendment prohibiting the passage of special acts by the Legislature is considered with the provision of the Constitution above referred to, it was intended that the action of the Legislature shall be subject to judicial review. We do not think that it was intended to do away with the classification of counties, cities and towns according to population or the topography of the country where such classification rests upon substantial differences in situation and needs. The amendment was intended to prevent arbitrary classification based on no reasonable relation between the subject-matter of the limitation and classification made. In determining whether a law was general or local, the Legislature might still make the classification where it was appropriate and germane to the subject and was based upon substantial differences which make one situation

different from another. The classification of counties and municipalities is legitimate when population or other basis of classification bears a reasonable relation to the subject of the legislation, and the judgment of the Legislature in the matter should control unless the classification is arbitrary or is manifestly made for the purpose of evading the Constitution. If the judgment of the Legislature must control in all cases, the amendment could serve no purpose, and the people might just as well not have initiated and adopted it.

In *State ex rel. Richards* v. *Hammer*, 42 N. J. Law, 435, the subject of statutory classification was thoroughly considered. The court said: "If it could be so sanctioned, then the constitutional restriction would be of no avail, as there are few objects that cannot be arbitrarily associated, if all that is requisite for the purpose of legislation is to designate them by some quality, no matter what that may be, which will so distinguish them as to mark them as a distinct class. But the true principle requires something more than a mere designation by such characteristics as will serve to classify, for the characteristics which thus serve as the basis of classification must be of such a nature as to mark the objects so designated as peculiarly requiring exclusive legislation. There must be substantial distinction, having a reference to the subject-matter of the proposed legislation, between the objects or places embraced in such legislation and the objects or places excluded. The marks of distinction on which the classification is founded must be such, in the nature of things, as will, in some reasonable degree at least, account for or justify the restriction of the legislation."

Again, the subject was comprehensively discussed by Mr. Justice Mitchell for the Supreme Court of Minnesota in *State ex rel. Douglas* v. *Ritt*, 76 Minn. 531, 79 N. W. 535. The learned justice said: "We have been over the whole subject of classification so often, particularly in *Nichols* v. *Walter*, 37 Minn. 264, 33 N. W. 800, and *State* v. *Cooley*, 56 Minn. 540, 58 N. W. 150, that it is unneces-

sary now to do more than restate two fundamental rules, *viz.*: First, that the basis of classification cannot be arbitrary or illusive, but must be founded upon a substantial distinction, having reference to the subject-matter of the legislation, between the objects or places embraced in the subject of the legislation and the objects or places excluded, as suggests the necessity or propriety of different legislation for the two in respect to the matter which is the subject of the legislation; second, that the act must include, and act uniformly upon, all of the class—that is, all whose conditions and wants render such legislation equally appropriate to them as a class. Judging from much recent legislation in this State, it would seem that the impression is prevalent that because classification on the basis of population may be proper for the purposes of legislation on certain subjects, therefore any classification on the basis of population is appropriate for the purposes of legislation on any subject. The sooner the minds of legislators and others are disabused of this erroneous impression, the better; for under any such rule the provisions of the Constitution against special legislation would become wholly nugatory. If it is permissible to adopt for any and all purposes a classification founded upon any and every arbitrary and illusive basis of population, we might have as many acts, general in form, but special in fact, as there are counties, cities, villages, townships, wards, and school districts in the State. It ought to be apparent to any one on a moment's reflection that, under the rules above stated, classification on the basis of population may be appropriate for one purpose, and not for another; that is, for legislation upon one subject, and not for legislation upon another. For example, a classification of counties or cities on the basis of population might be proper, as was held in *State ex rel. Anderson* v. *Sullivan,* 72 Minn. 126, 75 N. W. 8, for the purpose of fixing the compensation of county or city officers, inasmuch as the extent of their duties and labors presumably will bear some relation to the population of their respective counties and cities, while classification on any such

basis for the purpose of fixing the time at which elections should be held to elect such officers would be as arbitrary as if it had been based upon the initial letter of the names of the counties or cities.''

Our own court has expressly recognized that all classification must be based upon substantial distinction which makes one class really different from another. It must be based upon some material reason suggested by some difference in the situation of the subject which would suggest the necessity for different legislation with respect to them. *Le Maire* v. *Henderson,* 174 Ark. 936, 298 S. W. 327, and cases cited; and *Webb* v. *Adams,* 180 Ark. 713, 23 S. W. (2d) 617, and cases cited.

The rule itself is fair and reasonable, and the main difficulty is in the application of the rule to a particular case. In the case at bar, according to the title of the act, its purpose is to grant to county courts in counties having a population of 75,000 or more the right to condemn lands for the protection of public roads. Its preamble recites that in certain hilly and mountainous sections the rainfall is precipitated over State or public roads to their injury, and that such matter could be controlled and regulated by the construction of suitable dams or reservoirs. Section 1 provides that any five persons owning lands in the vicinity of a State highway or road on which the rainfall from the adjacent hills is precipitated so as to injure the roads may file a petition in the county court praying an order condemning land for a reservoir and authorizing the construction of suitable dams with the necessary reservoirs for impounding water to protect such roads.

Now it will be seen that the subject of the legislation is not applicable or germane to a classification by population. The topography of a county with less population than 75,000 with relation to the State or public roads in such county would create the necessity for the construction of dams or reservoirs for the alleged purposes of protecting public roads just as much as it may do so in counties of 75,000 or more population. In each case the basis of the classification would result from the topog-

raphy of the county and in no sense from the population thereof. A classification by population would have no connection with the subject of the proposed statute. In everything except mere form, it is manifest from the language used, when considered in connection with matters of which the court will take judicial notice, that the Legislature intended that the act should apply only to Pulaski County; and this is just as apparent as if it had been expressly so stated in the act. The basis of classification was not germane to the purpose of the act, and a general act applicable to all counties could have been framed which would accomplish the same purpose which the present act was intended to accomplish.

It is a matter of judicial knowledge that Pulaski County is the only county in the State which contains over 75,000 inhabitants or which is likely to do so far any reasonable time in the future. No ordinary increase in population will place any other county in the same class within any reasonable time. No express words could have been used by the Legislature to limit the application of the act to Pulaski County more definitely than those employed. The avowed purpose of the act has no reasonable relation whatever to the supposed protection of State or public roads by the construction of dams or reservoirs. The condition sought to be remedied would be created and would exist wholly from the topography of the county and not in any sense from the population thereof. As said by Judge Sherwood in *State ex rel. Harris* v. *Herrmann,* 75 Mo. 340, "The section (act) in question may be a general law in form, but courts of justice cannot permit constitutional prohibitions to be evaded by dressing up special laws in the garb and guise of general statutes."

The majority of the court is of the opinion that the classification based on population in the present case, when considered with reference to the purposes of the act, is illusory and a mere subterfuge to exclude the other counties from the provisions of the act. In the opinion of the majority, the act is unconstitutional as being a

special act passed in violation of amendment No. 12. Other objections to the constitutionality of the act are not considered or decided. Therefore the judgment of the circuit court affirming the judgment of the county court which condemned the lands under the authority of the act will be reversed, and the cause will be remanded with directions to the circuit court to adjudge that the order of the county court in the premises shall be vacated and that its judgment to that effect shall be certified down to the county court. It is so ordered.

SMITH, J., concurs; HUMPHREYS, J., dissents.