STATE EX REL. BURROW v. JOLLY, COUNTY JUDGE.

4-7381                                       181 S. W. 2d 479

Opinion delivered June 26, 1944.

*George M. Booth,* for appellant.

*Harrell Simpson, George H. Steimel* and *W. J. Schoonover,* for appellee.

GRIFFIN SMITH, Chief Justice. Appeal is from a Randolph ·Circuit Court judgment that Act 73, approved February 19, 1943,[1] invades Amendment No. Fourteen to the Constitution. We agree that it does.

The Act, initially, directs appointment (and later election) of road overseers ". . . in any of the counties . . . having a population between 18,300 and 18,350, or which may hereafter contain a population of not less than 18,300 nor more than 18,350."

According to the 1940 Federal Census, Randolph County had a population of 18,319—nineteen more than the minimum, and thirty-one less than the maximum, mentioned in the Act. No other county falls within the so-called "classification."

By mandamus it was sought to compel the County Judge to make appointments pending the election.

Appellant thinks the decision in *Murphy* v. *Cook,* 202 Ark. 1069, 155 S. W. 2d 330, is authority for the

[1] Section 1 of Act 73 is: "The County Court in any of the counties of this State having a population between 18,300 and 19,350, or which may hereafter contain a population of not less than 18,300 nor more than 18,350 shall appoint and employ one road overseer for each township of the county for a term to expire when his successor is elected at the next regular general election held after the passage of this Act in said counties, unless removed or discharged by the County Court, who shall receive for his services a sum not to exceed $3 per day for the time actually employed in the discharge of his duties as such overseer . . ." Section 2: "At the next regular general election held after the passage of this Act in said counties, road overseers shall be elected by the qualified electors residing in each township of said counties."

proposition that population as a basis—that is, not more nor less than stipulated figures (and this regardless of a narrow range)—sufficiently lifts an enactment from a local or special classification, with the result that ills sought to be prevented by Amendment Fourteen are not present.

Substance of the Murphy-Cook case is that a law applicable to counties within which there are cities having a population of 5,000 or more [2] is not predicated upon a static condition, nor is it so arbitrarily circumscribed as to infringe rules of construction previously announced as controlling. See *Lemaire* v. *Henderson,* 174 Ark. 936, 298 S. W. 327; *McLaughlin* v. *Ford,* 168 Ark. 1108, 273 S. W. 707; *Knowlton* v. *Walton,* 189 Ark. 901, 75 S. W. 2d 811.

The general principle was stated by Chief Justice HART in *Simpson* v. *Matthews,* 184 Ark. 213, 40 S. W. 2d 991. The Amendment, said the Chief Justice, was intended to prevent arbitrary classification "based on no reasonable relation between the subject-matter of the limitation and classification made." It was then said: "The classification of counties and municipalities is legitimate when population or other basis of classification bears a reasonable relation to the subject of the legislation, and the judgment of the Legislature in the matter should control unless the classification is . . . is made for the purpose of evading the Constitution. If the judgment of the Legislature must control in all cases, the Amendment could serve no purpose, and the people might just as well not have initiated and adopted it."

A quotation from Ruling Case Law, cited in *State ex rel. Atty. Gen.* v. *Lee,* 193 Ark. 270, 99 S. W. 2d 835, asserts that in determining whether a law is public, general, special, or local, the courts will look to its substance and practical operation rather than to its title, form, and phraseology, "because otherwise prohibitions of the

---

[2] The language is: "This Act is intended to apply to all the counties of the State which now have cities of a population of 5,000 inhabitants or which may hereafter have cities of a population of 5,000."

fundamental law against special legislation would be nugatory.''

When we apply this rule to the instant case there can be but one answer: the Act was designed to favor Randolph County. Restrictions have the inevitable and intended result of excluding other counties.

Of course it may be argued that elasticity is found in the provision for reception of counties that may ''hereafter'' fall within the circumscription. Practical operation, however, is to establish a system of road overseers by a process which excludes seventy-four other counties from the public policy so declared.

If we should reverse the judgment in this case, effect would be to say that the General Assembly, in adopting Act 73 and similar measures, has found a permissible point of penetration into Amendment No. Fourteen.

Our view is that the so-called ''classification'' is but an attempt by technicality to evade what the courts have heretofore said the people meant when by amendment to the Constitution they struck at the evil flowing from local and special laws.

Affirmed.