LAMAN, MAYOR *v.* HARRILL.

5-2472                                     349 S. W. 2d 814

Opinion delivered October 9, 1961.

*Spitzberg, Bonner, Mitchell & Hays,* for appellant.

*Terral & Rawlings,* for appellee, *James L. Sloan* of counsel.

NEILL BOHLINGER, Associate Justice. The appellee, who was plaintiff in the court below, contends that having taken the examination provided by the Civil Service Commission of North Little Rock and having been certified by said commission for a position as clerk, he is entitled to be employed in that position in place of another person who had not been certified by the commission, was not on its list of qualified persons, but had been placed in the position of clerk in the sanitation department by order of the mayor acting under an ordinance of the City of North Little Rock. The appellee then asked that no salary be paid to the mayor's appointee as clerk and that he be placed in· that job in her stead.

The mayor, in behalf of the officials of North Little Rock, contends that Act 61 of the Acts of the General Assembly for the year 1941 is invalid in that by its terms it is local legislation and is invalid under the terms of Amendment 14 to the State Constitution. The Civil Service Commission of North Little Rock was created by an ordinance enacted pursuant to Act 61 and was voted upon and approved by the people in an election.

The question presented is whether or· not Act 61 of 1941 is local legislation which is prohibited by the Constitution of the State of Arkansas.

Upon a trial in the Pulaski Chancery Court the chancellor found that the mayor's appointee was not a civil service employee and was holding a position classified by civil service and that she was not entitled to be on the city's payroll in any employment covered by Act 61 of 1941; that Act 61 of 1941 was a constitutional enactment and not in conflict with Amendment 14 of the Constitution and was valid in its entirety, and while restraining the officials from paying the mayor's ap-

pointee, the chancellor denied the prayer for mandamus to place appellee in the position of clerk. This places squarely in issue the question as to whether or not Act 61 of 1941 is a proper enactment in the light of Amendment 14 to the Constitution to the State of Arkansas.

From early times the people have sought to circumscribe the power of the legislature in the enactment of local and special laws. Sections 24 and 25 of Article 5 of the Constitution of 1874 are as follows:

"§ 24. Local and special laws.—The General Assembly shall not pass any local or special law changing the venue in criminal cases; changing the names of persons or adopting or legitimating children; granting divorces; vacating roads, streets or alleys.

"§ 25. Special laws—Suspension of general laws. —In all cases where a general law can be made applicable no special law shall be enacted; nor shall the operation of any general law be suspended by the Legislature for the benefit of any particular individual, corporation or association; nor where the courts have jurisdiction to grant the powers or the privileges or the relief asked for."

Section 25 above quoted left it largely a matter of legislative determination as to the applicability of special and general laws and much legislation which was special or local was passed from time to time.

The dissatisfaction of the people with that practice crystallized in the adoption of Amendment 14 to the Constitution which reads as follows:

"Local or special acts prohibited—Right to repeal acts by legislature.—The General Assembly shall not pass any local or special act. This amendment shall not prohibit the repeal of local or special acts."

This amendment is short and unambiguous—it bars local legislation.

Legislation may be roughly classified as general, special or local. A general law is one that operates upon

all counties, cities and towns alike. A law is special in a constitutional sense when by force of an inherent limitation it arbitrarily separates some person, place or thing from those upon which, but for such separation it would operate and a local law is one that applies to any subdivision or division of the state less than the whole.

The act before us, by its terms, applies only to cities having a population of 20,000 or over and which are located in counties having a population of 100,000 or more. There is a further limitation that the act should not apply to cities located in counties of 100,000 or more that are operating a civil service branch already implemented.

In arriving at the intention of a general or local law, this court in *City of Little Rock* v. *Town of North Little Rock,* 72 Ark. 195, 79 S. W. 785, stated the rule as follows:

"To make the law general it is not necessary that it should operate upon all cities and towns of the state. It is sufficient if it applies to all towns and cities in the state coming within the class named in the statute. We may concede, as counsel contends, that a statute, though in the form of a general law, may still be special if it be intended to apply, and can apply, to only one city or town in the state. . . ."

In *State ex rel Burrow* v. *Jolly,* 207 Ark. 515, 181 S. W. 2d 479, the court laid down a further guide for determination.

"* * * in determining whether a law is public, general, special, or local, the courts will look to its substance and practical operation rather than to its title, form and phraseology, 'because otherwise prohibitions of the fundamental law against special legislation would be nugatory.' "

In *Street Improvement Districts Nos. 481 and 485* v. *Hadfield,* 184 Ark. 598, 43 S. W. 2d 62, the court said:

"The general rule is that classification is properly based on population when reasonably adapted to the

subject of the statute. Otherwise the classification by population is special legislation. Other circumstances than population may be made the basis of classification when reasonably germane and pertinent to the subject-matter."

And we think this further citation from the *Hadfield* case, *supra,* applies:

"The authorities generally hold that classification of cities and towns by population cannot be arbitrarily adopted as a ground for granting some of them powers denied to others if, although there be a difference in population, there is no difference in situation or circumstances of the municipalities placed in the different classes, and the difference in population has no reasonable relation to the purposes and object to be attained by the statute."

A case that is applicable on all points is found in the case of *State* v. *Weakley,* 153 Ala. 648, 45 So. 175, in which the Supreme Court of Alabama passed on the constitutionality of an act which provided for the establishment of police commissions "in cities of 35,000 population or more, in counties of 125,000 or more population." The court there said that the statute in part was applicable to but one city and that it was unconstitutional as not being a bona fide classification of cities and further:

"The act in question was in no sense a classification of counties, as its manifest object is to create a police board in cities, and pertains in no way to the regulation of counties. Nor is it a *bona fide* classification of cities, as it expressly excludes cities of the same class, unless located in a county of a certain size. While there are cities in Alabama other than Birmingham with the necessary population, Birmingham is the only one located in a county with a population of 125,000. The substance of the act is for the sole purpose of regulating conditions in Birmingham, although the act is disguised in the garb of a general law. . . ."

In the case of *Simpson* v. *Matthews,* 184 Ark. 213, at p. 217, 40 S. W. 2d 991, this court passed upon the constitutionality of an act providing for the creation of improvement districts in counties of 75,000 or more population to provide dams and ponds to prevent the eroding of roads through heavy rains and this court, in pointing out the artificiality of the limitation, called attention to the fact that the classification according to population was not pertinent in that the rain fell upon all counties alike and "that the basis of classification cannot be arbitrary or illusive, but must be founded upon a substantial distinction, having reference to the subject matter of the legislation, between the objects or places embraced in the subject of the legislation and the objects or places excluded, as suggests the necessity or propriety of different legislation for the two in respect to the matter which is the subject of the legislation; second, that the act must include, and act uniformly upon, all of the class—that is, all whose conditions and wants render such legislation equally appropriate to them as a class."

Applying these principles to the case at bar, we think that limiting the act to cities of 20,000 or more was a proper exercise of legislative determination but we are mindful of the fact that other cities in the state had 20,000 or more in population but were denied the beneficent provisions of this act by reason of the fact that the counties in which they are situated did not have a 100,000 population. It is noted that the inhabitants of the county outside of the city were not permitted to vote on the adoption of the civil service system, or charged with any part of the expense of its operation and derived no benefit from its inclusion therefrom. Thus their inclusion was arbitrary and not germane to the legislation.

While the second paragraph of Section 1 of Act 61 provides as follows:

"Every city in this state shall be entitled to operate under this Act whenever any Federal Census taken

shows that such city has attained a population of more than 20,000 in counties having a population of 100,000 or over, and all other requirements of this Act have been met.''

We observe that two decades have come and gone since the enactment of Act 61 of 1941 and that Pulaski County is still the only county in the state having a population of 100,000 or more and the Act today is applicable only to North Little Rock which was the only city that could have qualified under the act at the time of its passage and the inclusion of this prospective application of the law represents nothing more than a futile effort to breathe validity into an act which was void at its inception.

We find that Act 61 of 1941 falls within the inhibition of the 14th Amendment to the State Constitution and is void as local legislation. The decree is therefore reversed and the cause is remanded to the Pulaski Chancery Court with directions to vacate the restraining order and to dismiss the complaint.