ARK. COMMERCE COMM. *v.* ARK. & OZARKS RWY. CO.

5-2709                                                          357 S. W. 2d 295

Opinion delivered May 21, 1962.

*J. Frank Holt,* Attorney General, by *Russell G. Morton,* Asst. Att. Gen'l.; *Harry E. McDermott, Jr.,* for appellant.

*Warren & Bullion,* for appellee.

CARLETON HARRIS, Chief Justice. This appeal involves the constitutionality of Act 62 of the Acts of 1961. The Arkansas & Ozarks Railway Corporation, in June, 1960, sought a certificate of public convenience and necessity from the Interstate Commerce Commission to abandon its railroad line, which operates from Seligman, Missouri, to Harrison, Arkansas. Service and operations on the railroad had been discontinued in May, 1960, as a result of flooding, which rendered impassable appellee's trackage and certain bridges in what is known as the Leatherwood Creek area. Following a lengthy hearing,

the hearing examiner for the Commission issued his intermediate report authorizing the abandonment of the road. In February, 1961, the General Assembly passed Act 62, levying a "removal" tax against "any railroad company seeking to abandon its entire line, or a major portion thereof, and seeking to sell its properties."

The constitutionality of the Act was attacked by complaint in the Pulaski Chancery Court (2nd Division), wherein it was alleged that said act was unconstitutional and void because:

"(1) It is confiscatory and amounts to a public taking of private property without just and adequate compensation contrary to Amendment 14 of the Constitution of the United States; (2) It is an unlawful, unwarranted and unconstitutional classification of taxpayers contrary to Amendment 14 of the Constitution of the United States and of Amendment 14 of the Constitution of the State of Arkansas; (3) It constitutes a burden upon interstate commerce conflicting with the commerce clause of the United States; (4) It denies the equality before the laws guaranteed by the Constitution of the State of Arkansas; (5) It is not equal and uniform, and is arbitrary and capricious contrary to the provisions of both the Constitution of the United States and of Arkansas; (6) It is a local and special law specifically forbidden by Amendment 14 of the Constitution of the State of Arkansas."

Defendants (appellants herein) were the Arkansas Commerce Commission, the Commissioners thereof, the State Treasurer, and the Attorney General. After the filing of demurrers, which were overruled, and an answer, the cause proceeded to trial, and after the taking of evidence, the court entered its decree finding that Act 62 was unconstitutional and void, and appellants were restrained and enjoined from enforcing or attempting to enforce said act. From the decree so entered, appellants bring this appeal.

A resume of the provisions of the act, and the circumstances attending its passage, is first in order. The act is composed of eight sections and an emergency clause. Section one authorizes the State Highway Department to construct and improve those portions of the highway system adversely affected by the cessation of operation of railroads previously available. Section two levies a removal tax against any railroad company seeking to abandon its line or a major portion thereof; the act purportedly levied the tax for the purpose of obtaining a portion of the necessary funds required for the maintenance of highways which will carry the extra burden of traffic. The removal tax is set at $20 per ton on scrap rail; $25 per ton on re-roll rail; $30 per ton on re-lay rail; $20 per ton on scrap frogs, switches, switch stands, guard rails, MT scrap fastenings, angle bars, bolts, spikes, scrap bridges, steel; 25% of the gross salvage value of equipment such as locomotives, turn tables, generators, cabooses, depots, round houses, and all other personal property. Section four provides that any railway company seeking to abandon rail service and remove such personal properties "shall, within seven (7) days from the passage of this Act, notify in writing the Arkansas Commerce Commission of its desire and intentions, and it shall furnish said Commerce Commission a complete inventory of its properties." This section sets forth that any expenses of the Commission for a survey and appraisal shall be borne by the railway company, and further provides that before any of the taxable assets are sold or removed, "such railroad shall pay over to the Treasurer of the State of Arkansas the full amount of removal taxes due as found by the Commerce Commission, and obtain written clearance from said Commission authorizing removal of said property." Section 5 provides certain exemptions to the act which will be hereinafter more fully discussed. Section six is the severance clause; section seven provides penalties for violation; section eight repeals laws in conflict, and section nine declares an emergency.

According to the evidence, the Arkansas & Ozark Railroad operated from Seligman, Missouri, to Harrison, Arkansas, a distance of approximately 70 miles, 62 miles of which were in this state. The evidence reflected that the revenue of the railroad had decreased almost from the time appellee commenced operations.[1] The United States government, under the authority of the Water Power Act, instituted proceedings in the United States District Court to condemn approximately 2.8 miles of the railroad near Beaver, Arkansas, and the area was subsequently flooded. According to appellee, this action, which severed the line, was the immediate cause of the petition for abandonment, and there was testimony that the cost of relocating the tracks was prohibitive. Further damage to the trackage and bridges was occasioned by the severe flood in May, 1961. This, then, is the background of the instant litigation.

Appellants question the jurisdiction of the Pulaski Chancery Court to determine the constitutionality of Act 62; contend that the proper parties were not before the court, and assert that no overt acts had been committed which would call for enforcement of the provisions of the statute, i. e., appellee had not notified the Commerce Commission of any intention to remove the railroad, nor asked for any written permission to remove. Accordingly, it is contended that appellee had not exhausted its administrative remedy. We find no merit in this contention. Under the authority of the State Constitution, Article 16, Section 13, any citizen of a county, city, or town, may institute suit to prohibit the enforcement of illegal exactions. In *Commissioner of Revenue* v. *Dillard's, Inc.*, 224 Ark. 826, 276 S. W. 2d 424, we upheld the right of the appellee to seek an injunction against the collection of a tax alleged to be illegal. In *McCarroll, Commissioner of Revenue* v. *Gregory-Robinson-Speas, Inc.*, 198 Ark. 235, 129 S. W. 2d 254, the court said:

---

[1] In 1955 the loss was $14,694.00; in 1956 it was $32,361.00; in 1957 it was $41,703.00; in 1958 it was $59,626.00; and in 1959 it was $56,-937.00. For the first six months of 1960 it was $30,226.00.

"We are of the opinion, therefore, that an individual has the right to go into a court of equity to enjoin the enforcement of any illegal tax or exaction and that this same right inures to the corporation, appellee, in the instant case, since a corporation is a person within the meaning of the equal protection and due process clauses of the Fourteenth Amendment to the Constitution of the United States."

The Commerce Commission is charged with appraising the properties and issuing the clearance, and the removal tax must be paid to the State Treasurer. Since these are the only parties directly involved in the collection of the tax, it follows that the necessary parties are before the court.

The act is patently unconstitutional, probably on at least three different grounds, but we will discuss only one phase of the statute which shows it clearly to be both arbitrary, and special legislation. Section five reads as follows:

"SECTION 5. Exemptions. This Act shall apply to all railroad properties in Arkansas, except short feeder lines which have outlived the purpose for which they were built; and except railroads which operate more than one hundred miles of main lines in Arkansas and all subsidiary lines of any such railroad; and except railroads and railway companies whose main line tracks in the State of Arkansas are less than fifty (50) miles in length."

The evidence reflects, as previously stated, that Arkansas & Ozarks has 62 miles of track in this state, and this is the only railroad in this state which has more than fifty miles, and less than one hundred miles, of main line tracks. The practical effect of the statute is the same as though the legislature had provided that the Arkansas & Ozarks Railway alone would be subject to its provisions. In determining the classification arbitrary, and therefore a violation of the Fourteenth Amendment to the Constitution of the United States, we think it apparent that the

ground of difference upon which the discrimination is based, *viz.*, length of line, has no fair or substantial relationship to the stated object sought to be accomplished by the legislation. Ceratinly, if the abandonment of a railroad line will require the state to provide additional highways for public transportation purposes, it logically follows that the abandonment of a railroad operating more than one hundred miles of track will impose a greater burden on the state's highway facilities than the abandonment of a railroad which operates less than a hundred miles of track. As stated by appellee in its brief:

"In the present case there is no reasonable relation to the classification made and the objects of the legislation. A 62 mile railroad's abandonment will work no more hardship on the highways than the abandonment of a 162 mile railroad. Indeed the volume of traffic will be greater in the latter instance. Is it in any way reasonable to assume that the abandonment of the A & O operations will place more freight on the highways of the state than the abandonment of the Missouri-Pacific or the Rock Island? Such an assumption would be ridiculous."

In *Royster Guano Co.* v. *Commonwealth of Virgina,* 253 U. S. 412, a state law which taxed all the income of local corporations from business done outside the state and business done within it, while exempting entirely the income derived from business outside the state by local corporations which did no local business, was held arbitrary and violative of the equal protection clause of the Fourteenth Amendment. The Court said:

"It is unnecessary to say that the 'equal protection of the laws' required by the Fourteenth Amendment does not prevent the States from resorting to classification for the purposes of legislation. Numerous and familiar decisions of this court establish that they have a wide range of discretion in that regard. But the classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial

relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. The latitude of discretion is notably wide in the classification of property for purposes of taxation and the granting of partial or total exemptions upon grounds of policy (citing cases). Nevertheless, a discriminatory tax law cannot be sustained against the complaint of a party aggrieved if the classification appears to be altogether illusory.''

In *Quaker City Cab Company* v. *Commonwealth of Pennsylvania,* 277 U. S. 389, the constitutionality of a Pennsylvania statute was at issue. This particular statute levied a tax on the gross receipts derived by foreign or domestic corporations from the operation of taxi cabs in intrastate transportation of passengers, but did not tax like receipts of individuals and partnerships in the same kind of business. In holding that the statute was unconstitutional, the court said:

''The equal protection clause does not detract from the right of the State justly to exert its taxing power or prevent it from adjusting its legislation to differences in situation or forbid classification in that connection, 'but it does require that the classification be not arbitrary but based on a real and substantial difference having a reasonable relation to the subject of the particular legislation.' ''

See also *Louisville Gas Company* v. *Coleman,* 277 U. S. 32. In *Rebsamen Motor Company* v. *Phillips,* 226 Ark. 146, 289 S. W. 2d 170, this Court said:

''In reading and considering this act in its entirety it is readily apparent that its purposes and effect, and under its terms, appellant, along with his salesmen and other franchised dealers and their salesmen, were regulated and required to pay a license fee for the privilege of engaging in the business of selling new and unused motor vehicles and on failure to pay the tax to be subject to prosecution on a misdemeanor charge, while their com-

petitors in the same community, who are not franchised, but who may deal in both new and used cars, along with their salesmen, were not regulated or required to pay the license fee and could operate without penalty, even through they were engaged in the same business. To hold that under its police power the legislature could enact such legislation, exempting from the tax automobile dealers engaged in new and used cars from paying the license fee, and at the same time requiring franchised dealers in the same community, who deal only in new and unused cars to pay the tax, is clearly, we think, an arbitrary classification and in conflict with Section 18 Article 2 of the Constitution of the State of Arkansas which provides that: 'The general Assembly shall not grant to any citizen or class of citizens privileges or immunities which upon the same terms shall not equally belong to all citizens.' It also contravenes the Fourteenth Amendment to the Constitution of the United States which prohibits a state from denying to 'any person within its jurisdiction the equal protection of the laws.' "

Likewise, the same section is violative of Article Fourteen to the Arkansas Constitution, which prohibits the General Assembly from passing any local or special act. In *Ark.-Ash Lumber Co.* v. *Pride & Fairley*, 162 Ark. 235, 258 S. W. 335, this Court said:

"The rule announced by nearly all of the authorities is that, in a judicial determination of the question as to the nature of a statute, whether general or special, the inquiry is not restricted to the form of the statute, but it reaches to a consideration of the necessary effect of the statute, regardless of its form."

As already stated, this legislation will only affect the one railroad, and we think it obvious that it was only intended to affect one railroad. This is even shown by the language of Section four, which provides:

"Any railway company heretofore abandoning rail service or seeking to abandon rail service and to sell and

remove from service such personal properties mentioned herein shall, within seven (7) days from the passage of this act notify in writing the Arkansas Commerce Commission of its desire and intentions and it shall furnish said Commerce Commission a complete inventory of its properties. * * *''

Of course, there was only the one railroad (appellee herein) which, at that time, was seeking to abandon rail service, and which, in fact, had already ceased operations. It alone was subject to the provision requiring a notice within seven days from the passage of the act. Appellant asserts:

''. . . it should be noted that Section 6 of the Act provides that if any clause, sentence, section or provision or any part of this Act shall be adjudged to be unconstitutional or invalid for any reason by any court, the judgment shall not impair, affect or invalidate the remainder of the Act which shall remain in full force and full effect. In other words, if any part of the classification provided for in Section 5 of the Act is declared unconstitutional for any reason, then only that classification or exception should be deleted from the Act. This would not invalidate the Act as it applies to Arkansas & Ozark Railway since, under these circumstances, it would apply to all other railroads.''

This reasoning is erroneous. As stated in 82 C. J. S., § 93, subsection (c), page 160:

''Where, by striking a void exception, proviso, or other restrictive clause, the remainder will be given a broader scope as to subject or territory than that intended by the legislature, the whole act is void; . . .'' Of course, by striking section five of the act, the statute is considerably broadened and the result would be an act applying to all railroads, whatever the amount of trackage, rather than railroads with main line trackage between fifty and one hundred miles in length. This would amount to judicial legislation, which is no part of our

duty. Furthermore, it cannot be presumed that the legislature would have passed Act 62 without the provisions of section five, and such a presumption is essential to the validity of the remainder of the Act. *Replogle* v. *Little Rock*, 166 Ark. 617, 267 S. W. 353.

For the reasons heretofore enumerated, it appears that the act had a single object—to prevent solely the Arkansas & Ozarks Railway from removing its properties. It was not the purpose of the act to prevent *all railroads* from removing trackage. The invalidity of section five therefore invalidates the entire statute.

The decree of the Chancery Court is affirmed.

BOHLINGER, J., not participating.