Richard ATKINSON et al *v.* BOARD OF
TRUSTEES OF THE UNIVERSITY
OF ARKANSAS ET AL

77-98

559 S.W. 2d 473

Opinion delivered December 19, 1977
(In Banc)

*Rose, Nash, Williamson, Carroll, Clay & Giroir,* for appellants.

*Friday, Eldredge & Clark,* by: *Robert V. Light,* for appellees.

*C. Dallas Sands,* University of Alabama, for Association of American Law Schools, *Amicus Curiae.*

CARLETON HARRIS, Chief Justice. This litigation refers to the constitutionality of Section 17 of Act 569 of 1975, effective July 1, 1975. The Act is entitled:

> "AN ACT to Make an Appropriation for Personal Services and Operating Expenses of the University of Arkansas at Fayetteville for the Biennial Period Ending June 30, 1977; and for Other Purposes."

Pertinent language from Section 1 states:

> "There is hereby established for the University of Arkansas at Fayetteville for the 1975-77 biennium, the following maximum number of regular employees

whose salaries shall be governed by the provisions of the Uniform Classification and Compensation Act, and all laws amendatory thereto, and by the provisions of the Regular Salary Procedures and Restrictions Act."

The Act then sets out salaries for the various employees, and appropriations for various functions of the University.

Section 17 reads as follows:

"It shall be unlawful for any person employed by the School of Law of the University of Arkansas, who is employed as a professor, associate professor, or instructor, in a full-time position for which a regular salary of nine (9) months or more is established under this Act, to handle or assist in the handling of any law suit in any of the courts of this State or of the federal courts. It is the purpose and intent of this Act to require that professors, associate professors, and instructors who are employed on a full-time basis of nine (9) months or more by the School of Law of the University of Arkansas, shall devote their full time to their duties and shall not engage, either for hire or without payment, in the handling of, or assisting in the handling of, any law suits or litigation while so employed. Any person violating the provisions of this Section shall be relieved from employment immediately upon the determination of such violation, and shall forfeit all rights of tenure in the University of Arkansas."

On April 2, 1976, twenty-one full-time present and former members of the faculty of the School of Law of the University of Arkansas at Fayetteville filed an action in the Pulaski County Chancery Court against the Board of Trustees of the University, and individually in their capacity as members of the board, the President of the University, and the Dean of the School of Law at Fayetteville, seeking a declaratory judgment that Section 17 was unconstitutional on its face. An injunction was sought prohibiting the enforcement of the section. After the filing of answers, the case was submitted to the court upon a stipulation with exhibits, and the deposition of Morton Gitelman, Professor of the School of

Law at Fayetteville.[1] Thereafter, the court entered its decree containing the following findings:

"1.

That Section 17 of Act 569 of 1975 is a valid exercise of the legislative power of the General Assembly.

2.

The prohibitions contained in that section are construed as not applying to or impairing the conduct of the persons affected which (1) constitute exercise of their rights of self-representation or (2) occur during periods intervening between the terms of their academic contracts, which periods include the summer vacation.

3.

The section is construed as not prohibiting the practice of law but only prohibiting that phase of such practice as constitutes handling of, or assisting in the handling of, any lawsuits or litigation, nor does it have any application to any person rendering uncompensated service to the University.

4.

The Court finds that it was the intention of the Legislature to regulate the conduct of all full-time law teachers at the University of Arkansas Schools of Law at both Fayetteville and Little Rock holding contracts of nine months or more and that the term 'instructors' is sufficient to extend coverage of the section to assistant professors."

The complaint was dismissed, and from such decree, appellants bring this appeal. For reversal, eight points are asserted, but we think Point 1 is dispositive of the issue; actually there is an overlapping of Points 1 through 3. Accordingly, a discussion of other points will be omitted.

---

[1]Wylie H. Davis, Dean of the School of Law, a party plaintiff, was also a defendant since the authority for the employment of the faculty of the School of Law had been delegated to him by the President of the University (the President having been delegated by the Board of Trustees to employ members of the faculty).

It is first contended that "The Trial Court erred in failing to find the statute denies appellants equal protection of the laws."

The appropriation act lists six different positions which are applicable to the law school,[2] together with maximum salaries authorized, as follows:

| | |
|---|---|
| Distinguished Professor | $34,000 |
| Professor | 32,000 |
| Associate Professor | 26,000 |
| Assistant Professor | 23,000 |
| Instructor | 19,000 |
| Lecturer | 10,000 |

Under Section 17, three of these classifications are permitted, without restriction, to practice law,[3] and three are restricted. As noted in the provisions of Section 17, heretofore quoted, distinguished professors, assistant professors and lecturers are not covered by the prohibition, while professors, associate professors and instructors come within the provisions. There is nothing in the record which reflects the various duties of these different classifications; in fact, the stipulation recites:

> "[T]here is no substantial difference in the teaching duties, assignments and loads among professors, associate professors and assistant professors at either of the Schools of Law of the University of Arkansas, but there is a difference in qualifications, faculty committee assignments and salaries among the three positions."

We are firmly of the opinion that the section is invalid as a violation of the Equal Protection Clause of the Fourteenth Amendment, the classification not being reasonable relative to the disparity which is shown, and hereafter mentioned, in several respects. This legislation does not qualify under the standard declared by the United States Supreme Court many

[2]Of course, the appropriation for the different categories applies to the faculty members of all the various colleges in the University.

[3]It goes without saying that, to practice law in this state in any respect, all must be licensed in Arkansas.

years ago in *Royster Guano Co.* v. *Virginia,* 253 U.S. 412. There, the court said:

> "It is unnecessary to say that the 'equal protection of the laws' required by the Fourteenth Amendment does not prevent the States from resorting to classification for the purposes of legislation. Numerous and familiar decisions of this court establish that they have a wide range of discretion in that regard. But the classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike."

In the 1969 case of *Trister* v. *University of Mississippi,* 420 F. 2d 499 (5th Cir.), the court held that while law school faculty members of the State University did not have an isolated constitutional right either to participate in the legal services program of the Office of Economic Opportunity, or to engage in part-time employment while teaching part-time at the law school, they did have the constitutional right to be treated no differently by a state agency than other faculty members of the law school, stating:

> "Plaintiffs, however, do have the constitutional right to be treated by a state agency in no significantly different manner from others who are members of the same class, i.e., members of the faculty of the University of Mississippi School of Law. No such right exists in isolation."

The most striking discrimination among law faculty members is shown by the fact previously mentioned; viz, that part of the law faculty is prohibited from the acts mentioned in Section 17, while other members of the law school faculty are unaffected by the provisions. The trial court simply found that the term "instructors" was sufficient to extend coverage of the section to "assistant professors." Appellees state, "A strong inference can be drawn that this was simply legislative oversight and as such would support no finding of invidious discrimination."

On the other hand, appellees argue that the activities of Professors James Gallman and Morton Gitelman[4] in engaging in the practice of law may well have prompted the inclusion of Section 17 in the Act, and it is contended that these activities provided a justification for setting up the classifications under discussion, stating:

"However, the most prominent examples of the conduct at which the statute was aimed available to the legislature at the time it was enacted was that of two full professors (Gallman and Gitelman) and it was fully within its competence to narrow the classification to reach what it perceived to be the most urgent need."

This argument, however, does not appear completely logical. Gitelman was, and is, a full professor, and Gallman (no longer employed) became a full professor at the time of the dispute among members of the faculty. The most notable distinction in the statute is that assistant professors can practice without legislative limitation, but associate professors are prohibited — yet, neither of these men was in that category. Accordingly, under appellees' argument, why did not the General Assembly simply apply the Act to full-time professors, rather than including two other categories, associate professors and instructors? There is absolutely no basis in the record for distinction between these last two classifications and assistant professors.

It is interesting that the appellants likewise argue, for a different reason, that the disputed section "may well have been passed for the purpose of silencing Professor Gitelman" who had represented the defendant, Grant Cooper, in a suit filed by twenty-three members of the General Assembly. Of course, the purpose of this reasoning is to urge a violation of Gitelman's First Amendment rights. This argument is entirely speculative, but at any rate, in *Wiseman v. Madison Cadillac Company,* 191 Ark. 1021, 88 S.W. 2d 1007, this court said:

[4]The Supplemental Abstract includes the full history of the dispute between then Dean Barnhart and Gallman with other members of the law faculty concerning the activities of Gallman in practicing law and appellees' brief also comments that Gitelman has been active counsel of record in several suits which have required him to reschedule classes when away from Fayetteville (this is supported by the record), and also involved in challenging the validity of a statute of the State by which he is employed.

"The intention of the Legislature, to which effect must be given, is that expressed in the statute, and the courts will not inquire into the motives which influenced the Legislature or individual members, in voting for its passage, nor indeed as to the intention of the draftsman or of the Legislature so far as it has not been expressed in the act."

See also "Extrinsic Aids — Legislative History," Sutherland, *Statutes & Statutory Construction,* § 48.17, (Sands 4th Ed., 1973), where it is stated:

"References to the motives of members of the legislature in enacting a law are uniformly disregarded for purposes having to do with its interpretation except as they are expressed in the statute itself."

Likewise, it is very clear from the title of the Act and Section 1 of same that Act 569 of 1975 applied only to the faculty of the University at Fayetteville. The fact that President Bishop of the University construed it to apply to both law schools, and directed compliance, does not change the legislative act itself, and the chancellor's finding that it was the intention of the legislature to regulate the conduct of all full-time law teachers at both schools of law located in Fayetteville and Little Rock, is not supported by the record. Probably the best evidence that Act 569 of 1975 did not, and was not meant to, apply to the law school at Little Rock, is the fact that a separate appropriation bill (Act 19 of 1975) was passed for "Personal Services and Operating Expenses" of the School of Law, University of Arkansas at Little Rock. This Act likewise sets out the salaries for the various law school faculty positions.

As previously indicated, we think it obvious that the trial court erred in finding that the term "instructors" is sufficient to extent coverage of the section to assistant professors, since, from the Act itself, it is apparent that these terms denote separate positions.

With the findings heretofore set out, there is no necessity to discuss other alleged errors.

Perhaps we should make it clear that we are not saying that a valid act on this subject cannot be enacted by the General Assembly, nor that the legislature cannot make logical classifications; indeed, our views are to the contrary. Certainly, the object or purpose of such legislation, i.e., to require law school personnel to devote full time to the duties for which they were employed, fosters a policy which cannot be said to be without merit, for when an individual accepts a position, he owes an obligation to fully perform the duties required, without hindrance from outside activities. Various agencies of government (and private businesses) prohibit outside employment, considering either that such employment interferes with satisfactory performance of the main occupation, or else presents a conflict of interest with the duties of the principal position.

Since we are holding that Section 17 is unconstitutional,[5] there is no point in remanding the case to the Pulaski County Chancery Court for an injunction.

Reversed.

BYRD, J., not participating.

---

[5]The invalidity of this section does not affect the validity of Act 569 of 1975. See *Levy v. Albright*, 204 Ark. 657, 163 S.W. 2d 529, where this court said:

"Where, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in the subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the Legislature would have passed the one without the other . . . If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained . . . "