HARDIN, COMMISSIONER OF REVENUES, *v.* CROOM.

4-6629 157 S. W. 2d 520

Opinion delivered January 12, 1942.

---

[10] Cf. *Thompson* v. *Wiseman,* 189 Ark. 852, 75 S. W. 2d 393.

520

*Leffel Gentry* and *Elsijane Trimble,* for appellant.

*Harper & Harper,* for appellee.

*Kirsch & Cathey, amici curiae.*

SMITH, J. A comprehensive Motor Fuel Tax Law was passed at the 1941 session of the General Assembly. Act 383 of the acts of 1941, page 1012.

Section 4 of this act provides that ''There is hereby levied a privilege or excise tax of six and one-half (6½) cents on each gallon of motor fuel as defined in this act

sold or used in this state, or purchased for sale or use in this state, to be computed in the manner hereinafter set forth; . . .''

Section 5 of this act reads as follows: ''Section 5. Border Tax Rate. A. The tax on motor fuel sold in cities or incorporated towns which border on a state line, or sold within three hundred (300) feet of the state line, or sold within three hundred (300) feet of the Arkansas terminal of a bridge spanning a river where the state line is the center or main channel of said river, where such sales of motor fuel are made therein and delivered into the underground storage tanks of retail dealers or where such sales are made therein to consumers and delivered directly into the standard fuel tank of a motor vehicle, shall be at the rate of tax as provided in the adjoining state, such rate not to exceed the rate in this act; provided, that where the state line is the center or the main channel of the Mississippi River this provision does not apply; provided, further that no existing city or incorporated town, the corporate limits of which did not on January 1, 1941, extend to within two (2) miles of the state line, shall take advantage of such border rate; and provided, further that no tax is hereby imposed upon or in respect to the transactions exempt from taxation under § 4 of this act.

''B. Any dealer of motor fuel who shall sell and deliver any motor fuel to consumers except motor fuel to be placed in the standard fuel tank of the motor vehicle of such consumers, at the rates provided for in subsection 'A' of this section, shall be guilty of a misdemeanor, and upon conviction, shall be fined in any sum of not less than fifty dollars nor more than five hundred dollars, or be imprisoned in the county jail for not to exceed thirty days or be both so fined and imprisoned.''

A somewhat similar differential in favor of border line dealers was upheld in the case of *Bollinger* v. *Watson,* 187 Ark. 1044, 63 S. W. 2d 642.

The State of Oklahoma, which adjoins this state on the west, has a gasoline tax of $5\frac{1}{2}$ cents, which is 1 cent less than the tax imposed in this state. Appellee operates

a filling-station in the city of Fort Smith, which city is separated from the State of Oklahoma by the Arkansas river. He is, therefore, one of those persons entitled to the benefit of § 5 of act 383.

Appellee brought this suit against the Commissioner of Revenues of this state, and for his cause of action alleged the following facts. Since the effective date of act 383, he has made sales of motor fuel at the border tax rate to consumers in addition to motor fuel placed in the standard fuel tanks of the motor vehicles of such customers, and intends to continue to do so; but the defendant Revenue Commissioner has threatened to cause his arrest for so doing, and is demanding the difference of 1 cent per gallon between the border tax rate and the regular tax rate on sales of gasoline not placed in standard fuel tanks of the motor vehicles of his customers. He prayed that the commissioner be enjoined from taking that action.

A demurrer to the complaint was filed, which was sustained in part and overruled in part. The court enjoined the commissioner from collecting the additional tax, from which decree the commissioner appealed. The court refused to enjoin the commissioner from prosecuting appellee for his violation of the law, from which decree appellee appealed.

Appellee insists that paragraph B of § 5, above quoted, is void as violative of § 18 of art. 2 of the constitution, in that it grants certain citizens rights denied to others. The basis of this argument is that, if only a standard tankful of motor fuel may be sold at the reduced tax rate, owners of vehicles having larger tanks may buy more motor fuel than the owners of smaller tanks may buy. We think there is nothing arbitrary about this limitation. It is a matter of common knowledge that the larger vehicles having more capacious tanks require more gasoline per mile in their operation than do lighter vehicles having smaller tanks.

It is insisted also that paragraph B is void as being in restraint of trade. But this is not true, for the reason that the act imposes no limitation upon the amount of

fuel which any purchaser may buy. Indeed, we are not prepared to say that such a limitation, if it existed, would be void under any or all circumstances, but the act does not impose that limitation. It does impose a limitation upon the amount of fuel which may be bought at a single purchase at the reduced rate. As a matter of favor and of policy the statutes give border dealers a rate lower than the general rate on certain sales. This being a matter of favor, and not of right, the General Assembly had the power to impose conditions upon which that favor might be exercised.

We cannot properly construe paragraph A without reading paragraph B in connection with it. No rule of statutory construction is better settled or has been more often invoked than that a statute must be read in its entirety to ascertain its meaning. Certainly, we may read all of any section of an act to determine the meaning of any portion of the section; and when we have thus read § 5 it appears clear that the legislative intent was to allow border dealers a preferential rate only in the circumstances stated. This is the extent of the preference for such dealers. Another rule of statutory construction applicable here is that tax exemptions are never presumed or implied. *Wiseman* v. *Arkansas Wholesale Grocers' Ass'n,* 192 Ark. 313, 90 S. W. 2d 987; *Wiseman* v. *Madison Cadillac Co.,* 191 Ark. 1021, 88 S. W. 2d 1007, 103 A. L. R. 1208.

It is insisted that paragraph B of § 5 is void because it is in conflict with § 10 of the act, and that the latter section contains the only provisions for the computation and collection of the tax, and that when once gasoline has been delivered into the storage tank of the dealer there is no provision in the law whereby it may be determined how much fuel has been sold and delivered into the tanks of the customers' vehicles and how much was otherwise sold. But § 29 of act 383 provides that the Commissioner of Revenues shall prescribe and publish such rules and regulations as may be necessary for the enforcement of this act; and we perceive no reason why the commissioner may not prescribe rules and regulations requiring the dealer who buys gasoline from a distributor to report

how much gasoline he has sold under conditions not permissible at the preferential rate. This method of collecting the sales tax has been approved by this court. We find no conflict between §§ 5 and 10 of this act. As we have said, paragraph B of § 5 does not attempt to impose any limitation upon the quantity of gasoline the dealer may sell. Paragraph A of this section imposes a limitation upon the quantity he may sell at the lower rate and the conditions upon which that sale may be made. And paragraph B of that section is intended to make this limitation effective by making it a misdemeanor to evade the provisions of paragraph A.

We conclude, therefore, that the court below was correct in refusing to enjoin the commissioner from enforcing the provisions of paragraph B of § 5; but we think it was error to hold that the tax could not be collected on fuel not sold in the manner provided by paragraph A of § 5, and that portion of the decree is reversed and vacated.