Saul LOCKWOOD *v.* STATE of Arkansas et al

5428                                    462 S. W. 2d 465

Opinion delivered February 1, 1971

*Dan McCrow,* for appellant.

*Joe Purcell,* Attorney General; *Garner L. Taylor, Jr.,* Asst. Atty. Gen., for appellees.

J. FRED JONES, Justice. This appeal by Saul Lock-
wood is from an adverse decree of the Garland County
Chancery Court in which Mr. Lockwood, through dec-
laratory judgment procedure, attacked the constitution-
ality of Act 135 of 1965 (Ark. Stat. Ann. §§ 41-3812—
3823 [Supp. 1969], commonly known as the Sunday
Closing Law).

Mr. Lockwood is of the Jewish faith and owns a
general retail merchantile store in Hot Springs. His pe-
tition and amendment thereto allege that he conscien-
tiously observes Saturday of each week as a day of rest
in accordance with the requirments of his religious
faith; that he abstains from selling items in his store on
Saturday that may not be lawfully sold on Sunday under
Act 135; that he proposes to keep his store open for
general business on Sunday and is threatened with prose-
cution if he attempts to do so. Mr. Lockwood alleged
several grounds for the unconstitutionality of Act 135.

Following a rather thorough memorandum opin-
ion, the chancellor rendered the decree appealed from,
as follows:

"IT IS THEREFORE, CONSIDERED, ORDERED
AND DECREED, that the plaintiff is permitted to
remain open and sell the listed commodities on
Sunday upon the condition, that he, in good faith,
closes his individual proprietorship sundown Fri-
day to sundown Saturday, next proceeding such
Sunday opening in conformity with the tenets of his
religion, and such Sunday opening applying only
to the individual proprietorship, and the Plaintiff's
cause of action is otherwise dismissed for want of
equity."

On appeal to this court Mr. Lockwood relies on
the following points for reversal:

"I   The unconstitutional sections of the Act are
     not separable and render the entire Act un-
     constitutional.

II     Section 12 of the Act is local legislation and is unconstitutional under Amendment 14 of the Arkansas Constitution.

III    Section 12 of the Act is an unlawful delegation of the legislative function and is therefore unconstitutional.

IV    Section 10 of the Act does not provide equal protection of law or freedom of religion, and is therefore unconstitutional.

V     The court erred in its interpretation of the word 'Day' and its findings as to the requirements of the appellant's religious beliefs."

The appellant's first point is rendered moot by the conclusions we have reached on the other four. Points two and three have to do with Section 12 of the Act and point four relates to Section 10. These Sections are as follows:

"SECTION 10. No natural person shall be subject to the criminal or injunctive provisions of this Act if that such natural person conscientiously observes a day other than Sunday as a day of rest in accordance with the requirements of his religious faith and abstains on such day from selling, or offering for sale, any items which may not be sold on Sunday under the provisions of this Act.

SECTION 12. In cities or towns whose corporate limits are adjacent to towns or cities in adjoining states, such cities and towns may by municipal ordinance permit the selling of items which are legally sold in such adjoining towns in other states, or they may enact more restrictive ordinances."

We agree with the chancellor that under the constitution of most states, the "so called" Sunday Closing Laws have been held valid as a proper exercise of the police power. *McGowan* v. *Maryland*, 366 U. S. 420, 6

L. Ed. 2d 393, 81 S. Ct. 1101. We have held, and we now hold again, that Arkansas is no exception. *Green Star Super Market, Inc.* v. *Stacy,* 242 Ark. 54, 411 S. W. 2d 871. We also hold that Section 12 of the Act is not local legislation within the prohibition of Amendment 14 of the Arkansas Constitution. Amendment 14 is as follows:

> "The General Assembly shall not pass any local or special act. This amendment shall not prohibit the repeal of local or special acts."

In support of his second point, the appellant relies on the cases of *Ark. Game & Fish Comm'n* v. *Clark,* 192 Ark. 840, 96 S. W. 2d 699; *State ex rel. Burrow* v. *Jolly,* 207 Ark. 515, 181 S. W. 2d 479; *Jacks* v. *State,* 219 Ark. 392, 242 S. W. 2d 704, and *Ark. Commerce Comm'n* v. *Ark. & Ozarks Rwy. Co.,* 235 Ark. 89, 357 S. W. 2d 295.

In *Clark,* the state Game & Fish Commission, under authority of Act 323 of 1935, passed and promulgated regulations for the protection of wildlife in the state. Among the regulations so passed was one changing the seasons and the number of days in which deer might be taken as well as prohibiting the chasing of deer with dogs in some designated counties, but not in others. The *Jolly* case had to do with an Act setting out the method of selecting road overseers. By use of population classification, the legislature attempted to avoid the effect of Amendment 14 by making the Act apply to all the counties of the state having a population between 18,300 and 18,350. Only one county in the state had such population and as was stated in the opinion, the Act eliminated all the other 74 counties from its provisions. The Act was struck down as in violation of Amendment 14.

The *Jacks* case concerned an Act which attempted to change the general stock law. Initiated Act No. 1 of 1950 was a general stock law act which prohibited the running at large of certain livestock on public high-

ways. Act 120 of 1951 attempted to amend the Initiated Act by making it apply only to paved highways and those designated as U. S. Highways. Act 120 also exempted from its operation any county or district having a stock law enacted prior to January 1, 1951. The state had well over 100 local and special stock law districts created for different classes of stock and for different purposes prior to 1951. Act 120, in effect, would have resulted in the re-enactment of all the local stock laws in existence on January 1, 1951, and was held to be in violation of Amendment 14.

In the *Ark. & Ozarks Rwy. Co.* case, the legislature had passed an Act obviously intended to prevent the abandonment of a railroad between Harrison, Arkansas, and Seligman, Missouri, by requiring the payment of a removal tax. All railroads in Arkansas of more than 100 miles or less than 50 miles in length were exempt from the provisions of the Act. Held: in violation of Amendment 14.

In all four of these cases relied on by the appellant, this court restated and adhered to the general rule pertaining to the purpose of Amendment 14 as announced in *Simpson* v. *Matthews,* 184 Ark. 213, 40 S. W. 2d 991, wherein Chief Justice Hart, writing for the court, said:

"In determining whether a law was general or local, the Legislature might still make the classification where it was appropriate and germane to the subject and was based upon substantial differences which make one situation different from another. The classification of counties and municipalities is legitimate when population or other basis of classification bears a reasonable relation to the subject of the legislation, and the judgment of the Legislature in the matter should control unless the classification is arbitrary or is manifestly made for the purpose of evading the Constitution."

In *State ex rel. Atty. Gen.* v. *Lee,* 193 Ark. 270, 99

S. W. 2d 835, this court quoted with approval from 25 R. C. L. page 815, as follows:

"In determining whether a law is public, general, special, or local, the courts will look to its substance and practical operation rather than to its title, form, and phraseology, because otherwise prohibitions of the fundamental law against special legislation would be nugatory."

The general purpose of the Sunday Closing Laws is to regulate business and commercial activities in such manner that the citizens of the state shall have a day of rest and relaxation. While it may be argued that the general purpose of such laws is now met, in our modern society, by the 40 hour work week and labor union contracts; it might also be argued that such change is more than offset, especially in the more congested areas, by the constant clamor and turmoil of modern day business and commerce. Section 12 of Act 135, supra, permits the classified border cities to adjust their day of rest to conform to the business and commercial activities in the adjacent area over which they have no control. It is our opinion that such classification does have a reasonable relation to the purpose of the Act. Applying the above rules to the case at bar, we hold that Section 12 of Act 135 is neither local legislation nor a delegation of legislative authority within the constitutional prohibitions.

We find no merit in the appellant's assignment under his fourth point. Section 10 of Act 135, supra, applies to all persons in the same class or similar situations as the appellant, and restriction on the freedom of religion does not enter into this case at all. If Section 10 of the Act required Mr. Lockwood to keep his store open on Sunday, or on any other day which the tenets of his religious faith require him to close it, this case would present a different problem, but such is not the situation in this case. Section 10 actually insures Mr. Lockwood *against* religious discrimination or restriction by permitting him to keep his store open on Sun-

day in lieu of closing it on whatever day his religion requires him to close it.

Mr. Lockwood alleged in his petition that the tenets of his religion require him to observe Saturday of each week as a day of rest and that he conscientiously does so. According to Mr. Lockwood's testimony, he considers his religious holiday as beginning at sundown on Friday, but he is rather vague as to when it ends. He personally observes that portion of Friday after sundown but indicates no conscientious religious scruples against keeping his store open during all hours *before* sundown on each day of the week, including Friday and Saturday. On this point Mr. Lockwood testified as follows:

"The major service is—in my faith, and I've always observed this since I was a boy—is the observance that is from sundown Friday to sundown Saturday. We—the major services are Friday nights and since I—since I've been adult I've never attended—they have a minor service on a Saturday morning, but we have never observed Saturday in the strength of business. We have always observed our church rites on a Friday night. That's the Reformed Judaism practices more that way. Our stores from the time my father had one that I used to be in with him, always observed Friday night and we were always open on Saturday."

As to appellant's fifth point, it is clear from Mr. Lockwood's testimony that the tenets of his religious faith require him to observe Saturday as a day of rest, but that the practices to which he personally subscribes only require him to observe Friday night. Under such circumstances we are unable to see how the provisions of Act 135 would handicap or affect Mr. Lockwood at all in the free exercise of his religious practices, for there is nothing in the Act that requires him to keep his store open on Friday night.

Apparently the chancellor recognized the possibility that Mr. Lockwood might desire to conscientiously ob-

serve all day Saturday as his religious day of rest as is his right to do so under the tenets of his religious faith; so, as to appellant's fifth point, we find that the chancellor's decree is not against the preponderance of the evidence.

The decree is affirmed.