BOARD OF TRUSTEES for the City of Little Rock, Arkansas, Police Pension Fund, et al.
*v.* CITY OF LITTLE ROCK, Arkansas

87-345                                              750 S.W.2d 950

Supreme Court of Arkansas
Opinion delivered May 31, 1988

*Robert A. Newcomb*, for appellants.

*Mark Stodola*, City Attorney, by: *Thomas M. Carpenter*,

Asst. City Attorney, for appellee.

DAVID NEWBERN, Justice. The Board of Trustees for the City of Little Rock Police Pension and Relief Fund and individual members of the board sued the City of Little Rock, contending that the city had not made certain contributions to the police pension fund required by law.

The city agreed with respect to some of the funds sought and made the appropriate contributions. However, the city claimed, with respect to a percentage of the fines collected from violators of municipal ordinances, that it was exempted by law from having to make those contributions. The circuit court agreed with the city, and the board has brought this appeal, contending that: (1) the legislation by which the city claims exemption was special legislation prohibited by Amendment 14 to the Arkansas Constitution; (2) the exempting legislation was repealed by a subsequent act; (3) the court erred in not allowing testimony about the intent of the legislature in passing the exemption on which the city relies; and (4) the court should have granted a new trial on the basis of newly discovered evidence. We hold that the exempting legislation was not repealed and could have had a rational basis, and thus it was not in violation of the Constitution. We also hold that the proffered testimony was inadmissible and that a new trial on the basis of newly discovered evidence was not justified. We therefore affirm the judgment of the trial court.

Act 250 of 1937 set up police pension and relief funds for cities of over 16,000 population. Act 206 of 1959 dealt with police pension and relief funds for cities of 75,000 or more. It referred to Act 250 of 1937 for the basic procedures, but added that cities with more than $80,000,000 property valuation were exempt from the provision requiring the cities to contribute to the fund 10% of fines for violations of municipal ordinances, and it left in place the requirement that those cities contribute to the fund money saved as a result of suspensions of police officers without pay and a fixed part of property taxes.

The exempting language of Act 206 of 1959 was codified as Ark. Stat. Ann. § 19-1802.1 (Repl. 1980). It was thereafter amended on several occasions to raise the exemption ultimately, in 1977, to cities having an assessed valuation of $200,000,000, or more, and then Act 690 of 1987 repealed the exemption alto-

gether. At the time it was raised to $200,000,000, only the City of Little Rock qualified for the exemption. Prior to the repeal of the exemption, however, several other cities qualified.

At a circuit court hearing, the board contended the city should have paid into its fund 10% of the fines levied for municipal ordinance violations for the years 1983, 1984, and 1985. The city claimed the exemption for those years. In support of its contention that the exemption violated the constitution the board offered the testimony of a former state senator who had introduced the legislation increasing the level of exemption from time to time. He would have testified the exemption was modified with the intention, in part, of keeping Little Rock from having to make the contributions. The board also proffered the testimony of the state administrator of the funds who would have testified that the Little Rock fund was actuarily unsound in comparison with the funds of other cities. The court refused to admit the testimony of these witnesses.

## 1. Repeal

The board contends that the legislation creating the exemption based on property valuation and each of the subsequent acts increasing the amount for exemption were amendments of Section 2 of Act 250 of 1937. Section 2 of Act 486 of 1981 began as follows: "Section 2 of Act 250 of 1937, as amended, the same being Arkansas Statute 19-1802, is hereby amended to read as follows . . . ." What followed was a revision of that section with no mention of exemption based on property valuation. The board contends the exemption was thus repealed because it had been created and changed from time to time by amending section 2 of Act 250 of 1937.

Act 206 of 1959, which created the initial exemption, did not purport to amend Act 250 of 1937. As mentioned above, it dealt with police pension and relief funds for cities of over 75,000 population and referred to Act 250 of 1937 for the basic procedures and then created the exemption. It was codified as Ark. Stat. Ann. § 19-1802.1. Each of the subsequent acts raising the property valuation level for exemption amended § 19-1802.1, not § 19-1802. The general assembly showed that it did not regard the exempting legislation as having been previously repealed when it specifically repealed it by Act 690 of 1987. *See*

N. Singer, *Sutherland Statutory Construction*, § 23.11 (4th Ed. 1985). In view of this history of the legislation, we conclude the exemption was in effect during the period in question.

## 2. Special legislation

██ Statutes are presumed not to be unconstitutional, and they will not be struck down unless they conflict with the Constitution "clearly and unmistakably." *Board of Trustees of Municipal Judges and Clerks Fund, City of Little Rock* v. *Beard*, 273 Ark. 423, 620 S.W.2d 295 (1981); *Buzbee* v. *Hutton*, 186 Ark. 134, 52 S.W.2d 647 (1932). Amendment 14 prohibits the general assembly from passing local or special acts. An act is special if by some inherent limitation it arbitrarily separates some person, place, or thing from those upon which, but for such separation, it would operate. A local act is one that applies to any division or subdivision of the state less than the whole. *Board of Trustees of Municipal Judges and Clerks Fund, City of Little Rock* v. *Beard, supra; Thomas* v. *Foust*, 245 Ark. 948, 435 S.W.2d 793 (1969).

█ When the exemption was made to apply to cities with over $200,000,000 property valuation, it applied only to Little Rock. Classification among geographical or political subdivisions is permitted if the general assembly could have had a rational basis for it, *Lovell* v. *Democratic Central Committee*, 230 Ark. 811, 327 S.W.2d 387 (1959); *Knowlton* v. *Walton*, 189 Ark. 901, 75 S.W.2d 811 (1934), and the fact that the classification includes only one city does not necessarily mean that it is "local" in the constitutional sense. *See Mankin* v. *Dean*, 228 Ark. 752, 310 S.W.2d 477 (1958).

█ The fund is supported by percentages of fines collected and may also be supported by a tax on all taxable property in a city having a fund. Ark. Code Ann. §§ 24-11-403 and 24-11-404 (1987). We agree with the city's argument that the general assembly could have concluded that a city or cities with the highest amount or amounts of taxable property could contribute enough from that source to make contribution from municipal fines unnecessary.

### 3. The testimony

█ The testimony of the former state legislator with respect to his intent in introducing the exempting legislation was clearly inadmissible. *Atkinson* v. *Board of Trustees of the University of Arkansas*, 262 Ark. 552, 559 S.W.2d 473 (1977); *Wiseman* v. *Madison Cadillac Co.*, 191 Ark. 1021, 88 S.W.2d 1007 (1935).

█ The board cites *Webb* v. *Adams*, 180 Ark. 713, 23 S.W.2d 617 (1929), for the proposition that we look to the practical effect of legislation in making our determination whether it is special or local in nature. That is exactly correct. The board argues that the testimony of the fund administrator should have been admitted as it would have shown that the practical operation of the legislation was to set Little Rock apart, and thus the testimony was relevant.

█ The exclusion of the evidence was correct for two reasons. First, no one contends that the legislation in question is not local or special in the sense that when it was passed it affected only Little Rock, and more recently has affected only Little Rock and a few other cities. The question, rather, as noted above, is whether the general assembly could have had a rational basis for making the classification. The testimony of the administrator had no bearing on that issue. Second, it is impossible to tell from the proffered testimony whether the Little Rock fund suffers in terms of soundness because of the exemption. The witness refers to one biennial evaluation done in 1984 from which she concluded that more contributions were needed. She did not, however, reach any conclusion whether the fund would have been sound in 1984 had the city contributed the percentage of municipal fines sought by the board, nor did she say how the soundness would be affected by the city's agreement to pay the 10% of fines collected for violations of state laws and for disciplinary suspensions.

### 4. Newly discovered evidence

█ The board moved for a new trial contending that the general assembly's repeal of the exemption was newly discovered evidence showing that the law violated the Constitution. Act 690 of 1987 was signed into law on April 7, 1987. While we have strong doubt that this act shows the exemption legislation to have

been unconstitutional, it clearly could have been discovered before the judgment in this case was entered on June 19, 1987. Ark. R. Civ. P. 59(a)(7). *Big Rock, Inc.* v. *Missouri Pacific Ry.*, 295 Ark. 495, 749 S.W.2d 675 (1988); *Liggett* v. *Church of Nazarene*, 291 Ark. 298, 724 S.W.2d 170 (1987).

Affirmed.

HICKMAN and PURTLE, JJ., dissent.

JOHN I. PURTLE, Justice, dissenting. My dissent is based primarily on Amendment Fourteen to the Arkansas Constitution which reads in its entirety as follows:

> The General Assembly shall not pass any local or special act. This amendment shall not prohibit the repeal of local or special acts.

The amendment is short and simple. There is no need to resort to complicated rules of interpretation. As we have stated so many times statutes are to be construed in accordance with their plain and ordinary meaning. This makes sense. Why complicate a statute by reading in all sorts of exceptions in order to accommodate special situations. That is exactly contrary to what the people of the state of Arkansas expected by the adoption of Amendment Fourteen.

I disagree with the majority in upholding this special and local legislation especially when it has already been expressly or impliedly repealed. In addition, I believe the majority opinion errs in excluding the proffered testimony of Ralph Patterson and Kathryn Hinshaw in its entirety.

The Policemen's Pension and Relief Fund was first established by Act 250 of 1937. Act 250 provided that cities with 16,000 or more inhabitants shall add to such funds ten percent (10%) "of all fines and forfeitures collected by the police department of such city for violation of city ordinances . . . ." The act did not provide an exemption for any city.

Act 206 of 1959 created an exemption for the city of Little Rock from paying into the policemen's pension fund ten percent (10%) of all fines and forfeitures collected by the police department for violation of city ordinances. Section 2 of this act in part provided: "any city that now has, or hereafter has, an assessed

property valuation in excess of $80,000,000" is exempted from adding to the policemen's pension fund the ten percent (10%) of all fines and forfeitures collected. At the time of the enactment of Act 206 the exemption applied only to the city of Little Rock.

The exemption, created for the city of Little Rock, had the effect of severely underfunding the pension plan between the years of 1959 and 1981. By 1981 the policemen's pension plan for the city of Little Rock was not financially able to meet the pension and retirement benefits according to state standards. This sad state of affairs is more proof that local and special legislation is generally unwise. Had the city of Little Rock not obtained passage of Act 206, exempting the city from paying some of the funds required to be paid by other cities, the Policemen's Pension and Relief Fund for the city would no doubt have been in a stronger financial condition.

The legislature attempted to correct this mistake by enactment of Act 486 of 1981. This act increased the amount of money added to the fund by the city through contributions collected from forfeitures and fines, and deleted the special exemption for the city of Little Rock. The act mandated that *all* cities add to the fund the ten percent (10%) of all fines and forfeitures collected for violation of city ordinances and state laws. Act 486 followed word for word, with minor changes, Act 250 of 1937. It is apparent that the legislature did not feel the need to specifically state that "the exemption is no longer applicable to the city of Little Rock." Act 486 was expressly made applicable to all cities.

Section 2 of Act 486 of 1981 states: "Section 2 of Act 250 of 1937, as amended, the same being Arkansas Statute 19-1802, is hereby amended to read as follows: Section 2. . . . ." Act 486 then reenacted Section 2 of Act 250 essentially as it was originally enacted with two exceptions: the 10% of fines and forfeitures was expressly extended to include fines relating to state laws as well as city ordinances; and no cities were exempted from any of the provisions of the act. The 1981 act concluded by stating: "All laws and parts of laws in conflict with this Act are hereby repealed." In spite of this clear and express language, the city of Little Rock continued to evade its duty to follow the law and provide for proper and adequate funding for its police department retirement benefits. For its failure to do the just and right thing in the matter,

the city argues that its own "special exemption" had not been expressly repealed by the 1981 act.

It became apparent to the General Assembly that the city of Little Rock was not, under any circumstances, going to comply with the 1981 act, even though the city had to be aware of the serious financial plight of the policemen's pension fund. In obvious disgust with Little Rock's continued defiance of the law and neglect and abuse of the retirement benefits for its policemen, the General Assembly enacted Act 690 of 1987. This act states: "The third sentence of Section 2 of Act 206 of 1959 as amended, the same being Arkansas Statutes 19-1802.1, is hereby repealed." There is now no escape from its legal and moral obligations because the third sentence of Act 206 was Little Rock's own special exemption from fully and fairly contributing to the policemen's retirement fund. Although this exemption had been at least impliedly repealed in 1981, it cannot now even arguably be said that the exemption still exists.

Unfortunately the pension plan has deteriorated to such an extent that the plan will not be adequately funded for several years. Hopefully the fund will be able to provide all of the benefits which will be required. However, this would currently not be a problem had the city simply complied with the 1981 act as was intended. All other cities having such a plan complied.

The adverse consequences of the 1959 act and the financial condition of the policemen's pension plan should have been examined by the trial court. The testimony of Kathryn Hinshaw, the executive director of the pension plan, should have been admitted. The majority states that "it is impossible to tell from the proffered testimony whether the Little Rock fund suffers in terms of soundness because of the exemption." Why else would the Little Rock fund be financially unable to meet retirement and pension benefits? The proffered testimony of Ms. Hinshaw was directly on point. There are four sources from which contributions are made to the pension fund. These are: (1) deductions from the policemen's salary, matched by contributions from the municipality; (2) fines and forfeitures for the violation of state laws; (3) millage levies; and (4) ten percent (10%) of the fines and forfeitures collected by the police department for violations of city ordinances. The city of Little Rock has contributed to the

fund through all of the above except number (4). Therefore it is only logical that its failure to pay the ten percent (10%) is the reason the plan is underfunded.

The city of Little Rock has since 1959 not been paying ten percent of the fines and forfeitures collected. Now the policemen's pension fund needs an additional $1.4 million per year to meet adequate funding requirements established by state standards. The plan is primarily underfunded because special and local legislation has exempted the city of Little Rock from paying the ten percent (10%) of fines and forfeitures which all other cities have been required to pay. The testimony of Kathryn Hinshaw would have enabled the trial court to have made this determination. Also, the testimony of Ralph Patterson was relevant as to the history of the act even if inadmissible to show the intent of the legislature.

It is unfortunate and disappointing that the state's largest and wealthiest city has so woefully neglected and underfunded the retirement benefits for its policemen. I can find no rational state purpose for the exception created by the special and local amendment to the statute exempting Little Rock from paying its full share into the retirement fund. The only way to partially repair the damage to the policemen's retirement fund is to require the city to pay the funds it illegally withheld during the years 1983, 1984 and 1985.

Apparently the General Assembly has retreated somewhat from its foray into the special and local legislative field. Such ventures by the General Assembly in the past caused the people to rise up and pass Amendment Fourteen. Hopefully, it will not be necessary for the people to take similar measures once again. This court could help guide the way by strictly following Amendment Fourteen, just as it reads.

HICKMAN, J., joins this dissent.