James Preston BOYD, Jr. *v.* Richard WEISS, Director of the Department of Finance and Administration for the State of Arkansas, The City of Texarkana, Dan Boyles, Delldon Brewer, Charles Drake, Dennis Huffman, Robert L. McMahon, Bobby Selph, Dewight Sperry, and Evelyn Townsend

97-895                                    971 S.W.2d 237

Supreme Court of Arkansas
Opinion delivered June 25, 1998
[Petition for rehearing denied September 10, 1998.]

*Williams & Anderson*, by: *Leon Holmes*, for appellant.

*Beth B. Carson*, for appellee Richard Weiss.

*Autrey, Autrey & Stewart*, by: *E. LeRoy Autrey*; and *Friday, Eldredge & Clark*, by: *William H. Sutton, Elizabeth Robben Murray, John C. Fendley, Jr.*, and *R. Christopher Lawson*, for appellee City of Texarkana.

*Patton, Haltom, Roberts, McWilliams & Greer, A Registered Limited Liability Partnership*, by: *Thomas Kirk Patton*; and *Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Allan Gates and Marsha Talley Ballard*, for appellees Don Boyles, Delldon Brewer, Charles Drake, Dennis Huffman, Robert L. McMahon, Bobby Selph, Dewight Sperry, and Evelyn Townsend.

ROBERT L. BROWN, Justice. This appeal arises out of a constitutional challenge to Act 48 of 1977, now codified at Ark. Code Ann. § 26-52-601 to -606 (Repl. 1997), which was effective on January 31, 1977. Act 48 permits residents of Texarkana, Arkansas, to pay an additional one percent sales tax in exchange for exemption from the state income tax. Under Act 48, border cities which are divided by a "street state line" are eligible for this change in tax status. The stated purpose of Act 48 was to equalize the tax burden for residents in these border cities, thereby offering tax inducements to people to locate their homes and businesses in Arkansas border cities. *See* Ark. Code Ann. § 26-52-601. In 1977, Texarkana, Arkansas, was the only Arkansas border city divided by a street state line under Act 48.

On September 13, 1977, the City of Texarkana held a special election in which a majority of its residents voted in favor of a one percent sales tax in lieu of state income tax. Since the effective date of this tax change, which was January 1, 1978, residents of

Texarkana have been exempt from state income tax just as their counterparts have been in Texarkana, Texas. Also since that date, the sales tax increase has been assessed against sales made within the Arkansas city.

On November 7, 1996, appellant James Preston Boyd, Jr., brought an illegal exaction suit in the Pulaski County Chancery Court against appellees Richard Weiss, Director of Finance and Administration, and the City of Texarkana in which he challenged the constitutional validity of Act 48 on several grounds. Boyd asked the chancery court to declare Act 48 unconstitutional and to enjoin the collection of the sales tax and the distribution of the form for claiming the income-tax exemption. Later, certain residents of Texarkana intervened on the side of Weiss and the City. The parties on both sides moved for summary judgment, and the chancery court granted summary judgment in favor of Weiss and the City. In doing so, the court observed that the cities of Texarkana, Arkansas, and Texarkana, Texas, are essentially one city in several respects. The court noted that the two border cities shared common governmental offices, public utilities, arts and cultural organizations, libraries, airports, and other commercial and cultural functions. The chancery court concluded that (1) there was no unlawful delegation of legislative and taxing power to residents of Texarkana; (2) a rational relationship existed for the "special" or "local" legislation; and (3) Act 48 did not violate the Equal Protection Clause.

## I. Unconstitutional Delegation of Authority

For his first argument on appeal, Boyd claims that the chancery court erroneously concluded that Act 48 was not an impermissible delegation of state legislative and taxing authority to the City of Texarkana and that the court erroneously relied on local-option decisions in making its decision. We disagree.

We begin by observing that Arkansas statutes are presumed to be constitutional, and the burden is placed on the party attacking the statute. *Fayetteville School Dist. No. 1 v. Arkansas State Bd. of Educ.*, 313 Ark. 1, 852 S.W.2d 122 (1993); *Phillips v. Giddings*, 278 Ark. 368, 646 S.W.2d 1 (1983). Thus, it was

incumbent on Boyd to prove that Act 48 amounted to an improper delegation of legislative power.

■ We view the issue of equalizing taxes in the Texarkana border cities as being vastly different from one involving women's suffrage, which was clearly a policy matter of statewide concern in *In Re Municipal Suffrage to Women*, 36 N.E. 488 (Mass. 1894). Nor do we see it as being comparable to legislation authorizing a few local election districts to decide whether state residents could fish oysters from their local waters. *See Bradshaw v. Lankford*, 21 A. 66 (Md. 1891). In *Bradshaw*, local voters without question were affecting recreation for the entire state populace, which was a decision more properly left to the state legislature. Boyd relies on both of these cases in his argument, but they are decidedly different from Act 48, which is first and foremost a local vote to implement legislation addressing a border-city problem generally, and Texarkana in particular.

■ Moreover, Act 48 does not constitute an unlawful delegation of legislative authority because the Act presented a complete plan of what the tax status in Texarkana would be, if the people approved it. We have affirmed the constitutionality of similar voter-approved legislation where the legislation is complete in itself. *See, e.g., Swanberg v. Tart*, 300 Ark. 304, 778 S.W.2d 931 (1989) (law authorizing horse racing on Sunday subject to voter approval not an unconstitutional delegation of legislative authority). McQuillin's treatise on municipal corporation states the premise succinctly:

> Generally a provision in a statute or in a municipal charter that it shall not take effect unless it is assented to by a majority or fixed percentage of the inhabitants of the municipality is not invalid as a delegation of legislative power, provided the statute is complete in itself.

McQuillin, The Law of Municipal Corporations § 4.10 at 30 (3d ed. 1994). The terms and content of the law under Act 48 were fixed. There was no power or discretion vested in the Texarkana voters to change the terms of the law as enacted.

■ Boyd next argues that the General Assembly can only delegate its legislative taxing power to local political entities under

the Arkansas Constitution "to the extent of providing for their existence, maintenance and well-being but no further." Ark. Const. art. 2, § 23. He posits that what Act 48 does is not benefit Texarkana but the state treasury with the additional sales-tax revenues. We take issue with this conclusion. The stated purpose of Act 48 was to protect the City of Texarkana by exempting from state income taxes residents who might otherwise be induced to move to Texas. The mere fact that the revenue from the increased sales tax goes into the state treasury does not negate or supersede this purpose.

Finally, Boyd contends that the City of Texarkana, by expanding its city limits, can automatically create a tax exemption under Act 48 and a sales-tax increase. We view this as a circumstance that is totally ancillary to the prime purpose of Act 48, which was to even out income-tax treatment for residents in the border cities. This issue has no merit.

## II.   Special or Local Legislation

Boyd next contends that Act 48 is impermissible "special" or "local" legislation. See Ark. Const. amend. 14. The people arbitrarily excluded by Act 48, according to Boyd, are people living in the remainder of Miller County and in surrounding areas in southwest Arkansas. Indeed, Boyd's counsel urged at oral argument that only by including the entire state as the affected area could the claim of "special" legislation be avoided.

Amendment 14 of the Arkansas Constitution reads: "The General Assembly shall not pass any local or special act." We have distinguished the two categories of "special" and "local." See Fayetteville Sch. Dist. No. 1 v. Arkansas State Bd. of Educ., supra. "Special" legislation may be arbitrary if it separates some person, place, or thing from another. Id. "Local" legislation, on the other hand, is legislation that is applicable to only one area of the state and for that reason may be arbitrary. Id.

Boyd contends that Act 48 is impermissible "special" legislation because it excludes people in the areas surrounding Texarkana and, in addition, excludes West Memphis by limiting border cities to those separated by a street state line. He contends it is "local"

legislation because (1) it is not prospective, (2) the classification by a state street line is not rational, and (3) it induces people in surrounding Arkansas cities to move to Texarkana.

### a. Special Legislation

■ We first take issue with Boyd's contention that people similarly situated in Miller County and surrounding areas have been arbitrarily excluded from the application of Act 48. We are convinced that Act 48, which limits its effect to the boundaries of the affected city, has a valid purpose which has already been stated in this opinion — to protect the border city by removing the inducement for that city to settle across the state line. See Fayetteville Sch. Dist. No. 1 v. Arkansas State Bd. of Educ., supra; Streight v. Ragland, 280 Ark. 206, 655 S.W.2d 459 (1983). But, in addition, we are also convinced that drawing the line for the affected area along the city boundary is reasonable and not arbitrary. No doubt, there is a collateral effect on cities like Ashdown, which is Boyd's home. We note, nevertheless, that a collateral impact on people living outside the line will always be the case wherever the line is drawn. See, e.g., Bollinger v. Watson, 187 Ark. 1044, 58 S.W.2d 421 (1933) (line for equalizing motor fuel taxes in border cities was the city limits). This impact does not, however, render the legislation unconstitutionally "special" so long as the line drawn is rationally related to the purpose of the Act. We hold that it is.

■ As a corollary argument, Boyd offers that West Memphis is arbitrarily excluded from qualifying as a border city under Act 48, even though Tennessee levies no income tax on wages, because the Act is limited to border cities with street state lines separating them. West Memphis and Memphis are separated by several miles and the Mississippi River as well. We initially observe that this court has approved in the past legislation to equalize motor fuel taxes in border cities, even though that legislation specifically excluded the West Memphis/Memphis situation. See Bollinger v. Watson, supra. But, more importantly, we see a marked difference in the ease of relocating a home between border cities separated by a street and those separated by some distance as well as a major river. In the case of the Texarkanas, there is more

the sense of living in one interdependent urban community, as the chancery court observed, where business and personal relationships have been established across the city-street boundary. This would not pertain as readily to West Memphis and Memphis where miles separate the two cities. Hence, we conclude that moving a home across one city street in what is essentially a combined city is categorically different from moving some distance away across a major waterway into a completely different urban environment. The threat to Texarkana was much more dramatic, and for that reason, the General Assembly's limitation in Act 48 to state-street-line border cities was not arbitrary.

### b. Local Legislation

■ ■ Boyd also contends that Act 48 is "local" legislation. Last year, in the case of *McCutchen v. Huckabee*, 328 Ark. 202, 943 S.W.2d 225 (1997), this court discussed what constitutes unconstitutional "local" legislation. In *McCutchen*, Act 739 of 1995 appropriated $20 million for a multipurpose civic center in Pulaski County. McCutchen asserted that if the Act applied to only one geographic subdivision of the state, Pulaski County, it was a *per se* violation of Amendment 14. We disagreed and said:

> To the contrary, this court has repeatedly held that merely because a statute ultimately affects less than all of the state's territory does not necessarily render it local or special legislation.
>
> Instead, we have consistently held that an act of the General Assembly that applies to only a portion of this state is constitutional if the reason for limiting the act to one area is rationally related to the purposes of that act.

*McCutchen*, 328 Ark. at 208, 943 S.W.2d at 227 (citations omitted).

The purposes of the civic center in *McCutchen* were to increase tourism, recreation, and economic development for the entire state. We took notice of the fact that Pulaski County is the most populated county in the state, is centrally located, and is the seat of government. Because of this, we concluded that we would not second-guess the decision of the General Assembly. We held that the decision to build the civic center in Pulaski County was

not "local" legislation and was rationally related to the purposes of the Act.

In an earlier case, we held that legislation that had the practical effect of exempting only Little Rock from contributing a percentage of municipal fines to the Police Pension Fund was not "local" legislation because a rational basis supported the classification. *See Board of Trustees v. City of Little Rock,* 295 Ark. 585, 750 S.W.2d 950 (1988). In *City of Little Rock,* cities with over $200 million in property valuations were not required under a legislative act to contribute part of their municipal fines to the Police Pension Fund. Only Little Rock qualified for this exemption. We held that the high property values in Little Rock, and the resulting property taxes, formed a rational basis for the exemption.

Boyd argues that because only Texarkana qualified under Act 48, it is "local" legislation and cites this court to *Humphrey v. Thompson,* 222 Ark. 884, 263 S.W.2d 716 (1954). He also claims that Act 48 fails for lack of prospectiveness and points out that under the terms of the Act, an election by the residents must occur by October 1, 1977 — a time frame of seven months. This narrow window, Boyd contends, was no window at all for border cities that might conceivably qualify other than Texarkana.

We first distinguish the case of *Humphrey v. Thompson, supra.* In *Thompson,* legislation had been passed which established new vocational-technical schools in counties having a population of less than 6,000. Only Perry County qualified, and we struck down the legislation on the basis that there was no reason shown why Perry County, more so than any other county in the state, should be the lone qualifier. Unlike the *Thompson* case, here there was clear reason for equalizing taxes, and that reason was to provide an incentive to people to settle in Texarkana, which was in jeopardy.

The chancery court did not address the prospectiveness argument specifically, but we cannot disagree that Act 48 was designed primarily to benefit Texarkana. To do so would be disingenuous on our part. Nor can we disagree that the door was shut almost immediately on any other border city with a street-state-line border that might qualify. The same is true of the classi-

fication in Act 48 that the border cities be separated by a "street state line." That criterion had the effect of limiting the applicability of Act 48 to Texarkana. But the mere fact that Act 48 was applicable only to Texarkana does not render it *per se* "local" legislation in violation of Amendment 14 so long as the geographical limitation is rationally related to the purposes of the Act. *McCutchen v. Huckabee, supra; Board of Trustees v. City of Little Rock, supra. See also* McQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS, § 4.54 AT 128-129.

▮▮▮ We believe that the chancery court correctly concluded that Act 48 "expresses a legitimate state objective to protect and promote the economic security of border cities . . . ." We have acknowledged the same state interest in past decisions. *See Bollinger v. Watson, supra* (act equalizing motor fuel taxes in certain border cities is a reasonable classification); *Lockwood v. State,* 249 Ark. 941, 462 S.W.2d 465 (1971) (act permitting border cities to adjust to adjoining states' Sunday closing laws reasonably related to purpose of protecting border cities).

The chancery court went on to say: "The legislature adopted the act in an effort to promote the critical interest of the State of Arkansas in protecting the economic vitality of Texarkana, Arkansas." Boyd counters, however, that a street state line is not a rational classification for protecting the state's border cities. We have already concluded in this opinion that it is a reasonable classification for purposes of protecting Texarkana from a population drain, just as exempting cities with over $200 million property valuation (only Little Rock) we held to be reasonable in *Board of Trustees v. City of Little Rock, supra.*

▮▮▮ Boyd further maintains, in response, that the narrow Act 48 classification might well exclude other closely connected border cities that are separated by some means other than a city street. We believe that Boyd's focus is misplaced. In our analysis, we consider whether the Act 48 classification is rationally related to protecting border cities, and specifically Texarkana. Our analysis should not be based on what tax problems involving other border cities with different boundaries might conceivably develop in the future. A street-state-line classification is unique in our judg-

ment and identifies cities that are inextricably intertwined with their out-of-state counterparts while excluding border cities that are not as closely related. Apart from West Memphis, which we have already discussed, Boyd presents no other fact pattern where an adjoining state (Oklahoma, Missouri, Mississippi, or Louisiana) has a preferential tax law or where an Arkansas town or city might be prejudiced as a result. The fact that some disparate tax treatment affecting border cities might arise in the future is not only speculative but seems a thin reason for us to strike down a current classification as arbitrary. On this point, the dissent fails to note that both the United States Supreme Court and this court engage in a reasonable-hypothesis analysis to *sustain* a legislative classification. *See, FCC v. Beach Communications, Inc.,* 508 U.S. 307 (1993); *Sullivan v. Stroop,* 496 U.S. 478 (1990); *United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166 (1980); *Streight v. Ragland,* 280 Ark. 206, 655 S.W.2d 459 (1983). The cases cited by Boyd do not support his argument that speculation and conjecture about possible border-town boundaries in the future may be used to strike down a legislative act.

██ Finally, we disagree with Boyd that Act 48 is "local" legislation in that it provides a tax incentive for people in surrounding Arkansas cities to move to Texarkana. That may well be a collateral effect of the legislation, the scale of which would only be speculation on our part. But that incidental circumstance is not determinative of the reasonableness of Act 48 in accomplishing its stated purpose. The line for affected people, to repeat, has to be drawn somewhere. The United States Supreme Court has said that in line-drawing cases the fact that the line might have been drawn differently "is a matter for legislative, rather than judicial consideration." *FCC v. Beach Communications, Inc.,* 508 U.S. at 316. We decline to redraw the line.

### III. Equal Protection Clause

For his final point, Boyd offers that Act 48 creates a classification between Texarkana residents and other Arkansans similarly situated who live just outside the Texarkana city limits. The classification argument has already been discussed, and we consider the

equal-protection argument to be the same essential claim dressed in different clothing.

Affirmed.

CORBIN, J., not participating.

Special Associate Justice H.E. CUMMINS joins.

NEWBERN and IMBER, JJ., dissent.

ANNABELLE CLINTON IMBER, Justice, dissenting. I agree with the majority except to the extent that they conclude that the street-state-line classification is rationally related to the purpose of Act 48. For this reason alone, I must respectfully dissent.

As the majority correctly acknowledges, when deciding whether an act is special or local legislation we must first determine whether the mechanics of the act are rationally related to its purpose. In this respect, the majority concludes that the income-tax exclusion contained in Act 48 is rationally related to the purpose of protecting "the border city by removing the inducement for that city to settle across the state line." I agree.

The majority, however, loses sight of the second and more important requirement that there must also be a rational basis for the *classifications* that limit the application of the act to only one area of the state. *McCutchen v. Huckabee*, 328 Ark. 202, 943 S.W.2d 225 (1997); *Foster v. Jefferson County Bd. of Election Comm'rs*, 328 Ark. 223, 944 S.W.2d 93 (1997); *Board of Trustees v. City of Little Rock*, 295 Ark. 585, 750 S.W.2d 950 (1988). As recognized by the United States Supreme Court in *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307 (1993), the heart of the constitutional challenge is that when the legislature draws lines, as it inevitably must, those lines must not be drawn arbitrarily, but instead their placement must be rationally related to the purpose of the Act.

In passing Act 48, the General Assembly chose to draw a line between border cities that were separated by a street-state line (admittedly only Texarkana), and those that were not. I can find no rational basis for this distinction. The majority claims that the street-state-line classification limits the application of Act 48 to border cities that are "inextricably intertwined with their out-of-

state counterparts while excluding border cities that are not as closely related." I disagree.

The explanation offered by the majority ignores the fact that other border cites could merge, just as Texarkana has, but not have a street that runs down the state line. Instead, there could be an alley, or a fence, or some other physical dividing point, or nothing at all that marks the border dividing otherwise "inextricably intertwined" cities. It is equally plausible that two integrated cities may be separated by a state border that meanders, thus making it impractical to place "a street" on the state line.

The majority contends that this is mere "speculation." Speculation, however, is the heart of a rational-basis analysis, for we have been consistently reminded by the United States Supreme Court to look for "plausible" or "conceivable," but not actual, reasons for the classifications that limit an act to only one area or group of people. *See, e.g., F.C.C. v. Beach, supra; Sullivan v. Stroop*, 496 U.S. 478 (1990); *United States R.R. Retirement Bd. v. Fritz*, 449 U.S. 166 (1980). Likewise, in *Streight v. Ragland*, 280 Ark. 206, 655 S.W.2d 459 (1983), we said that when performing the rational-basis analysis, "the judiciary is allowed to hypothesize."

Finally, the majority mentions cases where we have reviewed acts that created exemptions for border cities. In none of these cases, however, were the statutory exemptions extended only to border cities that were separated by a street-state line. *Lockwood v. State*, 249 Ark. 941, 462 S.W.2d 465 (1971); *Hardin v. Croom*, 203 Ark. 519, 157 S.W.2d 520 (1942); *Wiseman v. Phillips*, 191 Ark. 63, 84 S.W.2d 91 (1935), *Bollinger v. Watson*, 187 Ark. 1044, 63 S.W.2d 642 (1933).

In sum, I agree with the majority that the tax-equalizing purposes of Act 48 are rational, and perhaps laudable. I, however, cannot agree that only a border city that has a street running down the state line will be faced with the problem that this act was intended to alleviate. The street-state-line classification contained in Act 48 is arbitrary, and accordingly I would hold it unconstitutional. For this reason, I must respectfully dissent.

NEWBERN, J., joins this dissent.