The Honorable Denny Altes State Senator 3600 Moody Road Ft. Smith, AR 72903
Dear Senator Altes:
You have presented the following questions for my opinion:
 (1) Does A.C.A. § 26-55-211 violate the prohibition of local or special acts in Amendment 14 to the Arkansas Constitution?
 (2) Does A.C.A. § 26-55-211 violate any other provision of the Arkansas Constitution or the United States Constitution?
RESPONSE
Question 1 — Does A.C.A. § 26-55-211 violate the prohibition of local orspecial acts in Amendment 14 to the Arkansas Constitution?
Summary of Conclusion
It is my opinion that A.C.A. § 26-55-211 raises a constitutional concern under Amendment 14 to the Arkansas Constitution in connection with one of the classifications that it creates: the classification between border cities located on the Mississippi River and border cities located on other rivers.
Discussion
A.C.A. § 26-55-211 currently[1] states:
 Whenever any territory included within the boundaries of any city, incorporated town, or planned community in this state is included within the border tax rate on motor fuel, as provided for in § 26-55-210, or by any other law of this state governing the border area tax rate on motor fuel, the same rate of tax on motor fuel that applies in the border tax area of the city, incorporated town, or planned community shall also apply to all sales of motor fuel within the boundaries of the city, incorporated town, or planned community. Except in a city bordering a state line that is the main channel of the Mississippi, the provisions of this section shall apply only to that territory included within the limits of such city, incorporated town, or planned community on July 1, 2001, and shall not apply to territory added to or annexed to the city, incorporated town, or planned community thereafter.
A.C.A. § 26-55-211 (emphasis).
The emphasized language in the above-quoted provision permits the benefit of A.C.A. § 26-55-210 (a special border tax rate on motor fuel) to be extended to any areas annexed after July 1, 2001 to cities that border on "a state line which is the main channel of the Mississippi River." Areas that are annexed after July 1, 2001 to other border cities will not be entitled to this benefit.
This exception language creates three classifications:
 (1) A classification between certain border cities and non-border cities;
 (2) A classification between certain river border cities and non-river border cities; and
 (3) A classification between certain river border cities and other river border cities.
As explained more fully below, it is my opinion that the third classification above gives rise to a constitutional concern under Amendment 14. As also explained below, the first and second classifications do not, in my opinion, violate Amendment 14.
Before proceeding to elaborate upon these conclusions, I must point out the well-established principle that legislative acts are presumed to be constitutional. Jegley v. Picado, 349 Ark. 600, 80 S.W.3d 332 (2002). If it is possible to construe a statute as being constitutional, the courts will do so. Moreover, the burden of proof is on the party challenging legislation to prove its unconstitutionality, and all doubts will be resolved in favor of the statute's constitutionality. Luebbers v. MoneyStore, 344 Ark. 232, 40 S.W.3d 745 (2001).
With these principles in mind I will proceed to analyze A.C.A. §26-55-211 under Amendment 14 to the Arkansas Constitution.
Amendment 14 states:
AMENDMENT 14. LOCAL ACTS
 Local or special acts prohibited — Rights to repeal acts by legislature.
 The General Assembly shall not pass any local or special act. This amendment shall not prohibit the repeal of local or special acts.
Ark. Const., Am. 14.
The Arkansas Supreme Court has interpreted the terms "local" and "special," as used in Amendment 14, as follows:
 An act is special if, by some inherent limitation or classification, it arbitrarily separates some person, place, or thing from those upon which, but for such separation, it would operate, and the legislation is local if it applies to any division or subdivision of the state less than the whole.
Arkansas HSC v. Regional Care Facilities, Inc., 01-1106 (Ark. 12-19-2002), citing Hall v. Tucker, 336 Ark. 112, 983 S.W.2d 432 (1999);Fayetteville Sch. Dist. v. Arkansas State Bd. of Educ., 313 Ark. 1,852 S.W.2d 122 (1993); Owen v. Dalton, 296 Ark. 351, 757 S.W.2d 921 (1988).
However, the court has further explained: "Merely because a statute ultimately affects less than all of the state's territory does not necessarily render it local or special legislation." Id., citing Boyd v.Weiss, 333 Ark. 684, 971 S.W.2d 237 (1998); Littleton v. Blanton,281 Ark. 395, 665 S.W.2d 239 (1984).
The court has developed a "rational basis" standard for analyzing the question of whether legislation is special or local under Amendment 14. The court most recently described that standard as follows:
 [W]e have consistently held that an act of the General Assembly . . . that applies to only a portion of the state is constitutional if the reason for limiting the act to one area is rationally related to the purposes of that act. McCutchen v. Huckabee, 328 Ark. 202, 943 S.W.2d 225 (1997). Although a law may be limited in effect only to a few classifications, it is not necessarily special or local legislation if the classification is not arbitrary and bears a reasonable relation to the purpose of the law. Foster v. Jefferson County Bd. of Election Comm'rs, 328 Ark. 223, 944 S.W.2d 93 (1997).
Arkansas HSC v. Regional Care Facilities, Inc., 01-1106 (Ark. 12-19-2002).
The court has specifically addressed Amendment 14 challenges to statutory provisions that treat border cities differently than non-border cities and has, in some cases, upheld such provisions against the challenges. For example, in Bollinger v. Watson, 187 Ark. 1044, 63 S.W.2d 642 (1933), the court addressed various constitutional challenges to Act 63 of 1931, the predecessor of A.C.A. § 26-55-210. That act provided that the motor vehicle fuel tax in border cities would be the same rate as in the adjoining state, not to exceed a rate established in the act. (This provision was similar to the current provisions of A.C.A. § 26-55-210.) One of the constitutional challenges to the act was that it constituted local or special legislation under Amendment 14, because it singled out border cities for special tax treatment. The court rejected the challenge. In analyzing the applicability of Amendment 14, the court reviewed various cases, cited by the challenger, in which the court had sustained Amendment 14 challenges. The court gleaned the following principle for the analysis of Amendment 14 challenges, as stated by the court in Simpson v. Matthews, 184 Ark. 213, 40 S.W.2d 991 (1931):
 "We do not think that it was intended to do away with the classification of counties, cities and towns according to population or the topography of the country where such classification rests upon substantial differences in situation and needs. The amendment was intended to prevent arbitrary classification based on no reasonable relation between the subject-matter of the limitation and classification made. In determining whether a law was general or local, the Legislature might still make the classification where it was appropriate and germane to the subject, and was based upon substantial differences which make one situation different from another. The classification of counties and municipalities is legitimate when population or other basis of classification bears a reasonable relation to the subject of the legislation, and the judgment of the Legislature in the matter should control unless the classification is arbitrary or is manifestly made for the purpose of evading the Constitution."
Bollinger, 187 Ark. at 1049, quoting Simpson v. Matthews, supra.
Applying the above-described principle, the court determined that the challenged classification of border cities was not arbitrary and was reasonably related to the purpose of the act. The court reasoned that the purpose of the act was to impose a tax for the use of the highway to be measured by the extent of the amount of motor fuel consumed in motor-driven vehicles. The object was to obtain revenue for the building and maintenance of the highway system for the benefit of those who used the system. The court noted that the legislature had recognized that the rate of taxation on motor fuel was much lower in some of the bordering states than in Arkansas, made possible because of those states' greater wealth and population. The legislature had also recognized that the inhabitants of the border cities would likely drive across the state line and purchase fuel in the adjoining state to take advantage of the lower price, thereby depriving the State of Arkansas of some revenue from the operation of cars on its highways. The court concluded, upon the basis of these observations, that placing border cities in a separate classification was not arbitrary, but was made necessary by the situation. The classification thus bore a reasonable relation to the purpose and object sought to be accomplished by the act. Accordingly, the Amendment 14 challenge did not succeed.
In Boyd v. Weiss, 333 Ark. 684, 971 S.W.2d 237 (1998), the court addressed the constitutionality of the more narrow classification of treating certain border cities differently than other border cities. This more narrow classification was similar to the second and third classifications (listed above) created by A.C.A. § 26-55-211. The classification in question in Boyd was created by Act 48 of 1977 (A.C.A. § 26-52-601 through -606). The act applied only to border cities and towns "divided by a street state line from an incorporated city or town in an adjoining state in which the other state does not levy a state income tax." A.C.A. § 26-52-602. It permitted such cities to elect to adopt an additional one cent gross receipts tax in lieu of its residents paying income taxes. Texarkana was the only city in Arkansas that was eligible to receive the benefit of the act. Other border cities (such as West Memphis) did not qualify for the benefit, because they were not divided from the adjoining state by a street state line. The act was therefore challenged on the grounds (among others) that it was special or local legislation in violation of Amendment 14. The court rejected the challenge.
The court noted that the purpose of the act was to remove incentive for the residents of the city to settle across the state line in the part of the city located in the adjoining state. The court held that the act was not arbitrary in excluding other border cities, such as West Memphis, from the application of the act on the grounds that they are not divided by a street state line, because there is less incentive in such cities to relocate over long distances and major waterways than in cities divided from the adjoining state only by a city street. The court concluded on this basis that the classification was reasonably related to the purpose of the act. It therefore did not violate Amendment 14.
Application to A.C.A. § 26-55-211
In applying the principles from the foregoing precedents to a determination of whether A.C.A. § 26-55-211 violates Amendment 14, I must consider whether the classifications created by the statute are reasonably related to the purpose of the statute. The exception language that creates the classifications (i.e., the language emphasized in my quotation of the statute above, concerning cities whose border is a main channel of the Mississippi River) was added to A.C.A. § 26-55-211 by Acts 1997, No. 727. Neither the language nor the title of that act gives any indication of the purpose of adding this classification. I can nevertheless conduct my analysis on the basis of a hypothetical purpose for the classification. That is, the court has held that if it is possible to conceive a rational basis for a classification of this nature, it should be upheld. Boyd v. Weiss, 333 Ark. 684, 971 S.W.2d 237
(1998).
1. Border Cities/Non-Border Cities
The first of the classifications listed above (i.e., the classification between certain border cities and non-border cities) has been challenged under Amendment 14 with regard to the benefits of A.C.A. § 26-55-210 and has been upheld, as discussed above. See Bollinger v. Watson,187 Ark. 1044, 63 S.W.2d 642 (1933). It therefore does not present a constitutional problem with regard to A.C.A. § 26-55-211 (which simply extends the benefits of A.C.A. § 26-55-210 in certain instances).
2. River Border Cities/Non-River Border Cities
It is my opinion that the second classification (i.e., the classification between certain river border cities and non-river border cities) also does not violate Amendment 14 to the Arkansas Constitution. I find that it is possible to hypothesize a rational basis for this classification. The legislature could conceivably have added the exception language of A.C.A. § 26-55-211 for the purpose of re-enforcing and assuring the effectiveness of A.C.A. § 26-55-210(b). That provision states:
 (b) Whenever any bridge spanning a river where the state line is in the center of the main channel of the river as defined and subject to the provisions of subsection (a) of this section shall have been or shall be abandoned, redesigned, relocated, or otherwise changed so that areas previously within eight hundred feet (800') of the Arkansas terminal of a bridge spanning a river where the state line is in the center of the main channel of the river shall, in whole or in part, no longer be within eight hundred feet (800') of the Arkansas terminal of such bridge, then the tax on motor fuel sold within eight hundred feet (800') of the Arkansas terminal of that bridge prior to its abandonment, redesign, relocation, or other change shall continue to be fixed on the same basis as if no such abandonment, redesign, relocation, or other change of the Arkansas terminal of the bridge had been made or taken place.
A.C.A. § 26-55-210(b).
The above-quoted provision is clearly intended to extend the applicability of the border tax rate to geographic locations that originally fell within the 800' area to which the border rate applied (i.e., areas within 800' of the Arkansas terminal of a bridge spanning a state-line river), but that ceased to be within that area due to a change made to the river bridge. If an area of this description was not originally located with the city limits, and the city seeks to annex it after July 1, 2001, a question could be raised as to whether that area would be entitled to the border tax rate, because of the provisions of the main clause of A.C.A. § 26-55-211, which disallow application of the border rate in areas annexed after July 1, 2001. Thus, the exception language makes clear that if an area of this description is later annexed by a river border city, that area will still be entitled to the border tax rate, despite the main clause of A.C.A. § 26-55-211. Clearly, a concern of this nature would not arise in areas annexed to non-river border cities, because such areas could not be affected by a bridge alteration; rather, such a concern would arise only in cities bordering a river channel state line. Addressing this concern in river border cities was a rational basis for the classification between river border cities and non-river border cities. Accordingly, I conclude that this classification is reasonably related to a conceivable purpose of the statute, and therefore does not, in my opinion, violate Amendment 14 to the Arkansas Constitution. See also Ops. Att'y Gen. Nos. 2001-237; 88-325; 87-68.
3. Mississippi River Border Cities/Other River Border Cities
However, it is my opinion that the third classification (i.e., the classification between border cities located on the Mississippi River and border cities located on other rivers) raises a constitutional concern under Amendment 14. I am not able to hypothesize a rational basis for this classification. The same concerns would arise in border cities located on other rivers as would arise in border cities located on the Mississippi River regarding annexation and other matters related to the border tax rate. I simply cannot conceive of a rational basis for this differentiation in treatment of river border cities. Accordingly, I must conclude that to this extent, A.C.A. § 26-55-211 gives rise to a constitutional concern under Amendment 14 to the Arkansas Constitution.
Question 2 — Does A.C.A. § 26-55-211 violate any other provisionof the Arkansas Constitution or the United States Constitution?
It is my opinion that the classification between border cities located on the Mississippi River and border cities located on other rivers gives rise to concern under Article 2, §§ 3 and 18 and of the Arkansas Constitution (equal protection and privileges and immunities), and under Amendment 14 to the U.S. Constitution (equal protection). The standard that is applicable to an analysis of legislation under these constitutional provisions is the same "rational basis" standard that is applicable to Amendment 14 to the Arkansas Constitution, as discussed in response to Question 1 above. See Medlock v. Leathers, 311 Ark. 175,842 S.W.2d 428 (1992); Streight v. Ragland, Comm'r, 280 Ark. 206,655 S.W.2d 459 (1983) (rational basis standard applicable to equal protection claims in taxation context); Streight, supra (rational basis test applicable to privileges and immunities claims). That is, in order to be constitutionally permissible under these provisions, a classification must be reasonably related to the purpose of the statute creating the classification; the classification must have a rational basis.
As discussed in the Amendment 14 analysis above, I am unable to hypothesize a rational basis for treating border cities located on the Mississippi River differently than border cities located on other rivers. Accordingly, I conclude that this classification created by A.C.A. § 26-55-211 is constitutionally suspect under Article 2, §§ 3 and18 of the Arkansas Constitution, and under Amendment 14 to the U.S. Constitution.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
[1] Several bills are currently pending before the General Assembly that would amend or repeal A.C.A. § 26-55-211. See, e.g., HB 2867; SB 58; SB 695.